PETER SCHERTZ

v.

FIRST NATIONAL BANK OF CHESTER.

*Corporations—Liability of Stockholders—Constitution and Laws of Kansas—Pleading—Variance.*

1. A declaration describing a judgment against one, is not supported by the production of a judgment against that one and another, or others. A material variance exists in such case.

2. A State Constitution may be drawn with a view of submitting a given matter to the legislature, by enactment to give it vital force and effect, and to leave it in abeyance until such time as it sees fit to act.

3. When a constitutional convention indicates an intention to so frame the instrument as to secure the debts of a corporation of a given class by the individual liability of the stockholders to an amount equal to the stock owned by them, but leaves it to the legislature to provide for such other means of security as it should judge most conducive to the public interest, if the legislature should fail to provide a remedy, then the right will still remain, and the common law will supply one. Creditors can not be deprived of their assured security by any omission of the legislature to enact a remedy.

4. A suit at law would be the proper action to bring in this State to recover under the Kansas statute providing that a stockholder of a corporation shall not be liable to pay the debts of the corporation in excess

of the amount due on his stock, and an additional amount equal to the stock owned by him. The stockholder may make a defense if he has a valid one.

5. A judgment against a corporation in such cases is conclusive as to the amount and validity of the creditor's claim, and when suit is brought to enforce the shareholder's statutory liability, such judgment can be impeached only for fraud and collusion, or for want of consideration.

6. A judgment stating the sum of the judgment and costs and adding "whereof let execution issue," is equivalent to formally stating that the "plaintiff have and recover from the defendant" the amount found due.

[Opinion filed May 25, 1893.]

APPEAL from the County Court of Woodford County; the Hon. A. M. CAVAN, Judge, presiding.

Messrs. A. R. RICH and W. L. ELLWOOD, for appellant.

We insist that even if the constitution and statute of Kansas do create a liability, the liability can not be enforced in this State. There is no case in our State where such a liability has been enforced, and we believe that our Supreme Court when called upon to pass upon the question, will follow the Supreme Court of Massachusetts, and other States, and decline to enforce the liability, and insist that before there can be a recovery against a citizen of this State holding stock in a foreign corporation, there must be an adjudication against him in the State where the corporation exists. Massachusetts, New Hampshire, West Virginia and Wisconsin have refused to enforce such a liability. New Haven Horse Nail Co. v. Linden Spring Co., 142 Mass. 34–37, N. E. Rep. 773, and cases cited therein; Rice v. Hosiery Co., 56 N. H. 114; Andrews v. Bacon, 38 Fed. Rep. 777; Nimic & Co. v. Mingo Iron Works Co., 25 W. Va. 184; May v. Black, 77 Wis. 45, N. W. Rep. 949; Bank of North America v. Rindge, 27 N. E. Rep. 1015, which is a Massachusetts case concerning another Kansas corporation.

In New Haven Horse Nail Co. v. Linden Spring Co., the court says: "Where the rights sought to be passed upon and determined, are those which arise from the rela-

tion between a corporation and its members, they depend
upon a local law which exists at the place of its creation,
and true policy would seem to require us to leave them
there to be determined." "The liability which the stock-
holders are alleged to be under to the corporation and its
creditors has little analogy to a demand for a debt due,
according to the general recognized principles of law. It is
of a peculiar character involving the organic law by which
the corporation is created and requiring local administra-
tion." (In Young v. Farwell, 28 N. E. Rep., our own
Supreme Court quotes this language approvingly.) "We
have heretofore, in similar cases, declined to pass upon them,
and determine the relation existing between a foreign cor-
poration and its members, and the obligations arising there-
from." The court then cites some of its former decisions.
Continuing, the court says : "The reason why we should not,
in the case at bar, undertake to enforce the alleged obliga-
tions of the members of this corporation, appear decisive.
They are quite different from those which arise in Massa-
chusetts from a contract to have and subscribe for shares.
By our laws, as settled by many decisions, in the absence
of an express promise to pay for shares, none is created by
a mere subscription therefor. Nor is any created by a mere
agreement to take shares. No personal liability exists, as
the corporation can by law assess such shares, and sell them
for non-payment of assessments, which is held to be a suffi-
cient remedy." The court then says that while a different
rule prevails in many other States, it has been approved in
others, and cites as approving the rule, Kennebeck & P. R.
Co. v. Kendall, 31 Me. 470; Rail Road Co. v. Johnson, 10
Frost, 403; Rail Road Co. v. Bailey, 24 Vt. 465; Seymour v.
Sturgess, 26 N. Y. 134.

It then says : "It does not seem advisable that we should
seek to enforce a liability thus differing from any which
would have been incurred if the defendants had subscribed
for shares of stock in a corporation formed in this State."

We think this reasoning sound and very forcible, and can
well be applied in this State, and to the case at bar.

The case of Bank of North America v. Rindge, 27 N. E. R. 1015, is one of the latest cases upon the subject, and is a Massachusetts case concerning a Kansas corporation. We can not quote this case at length, but hope the court will examine it carefully. There the court, after saying it does not take jurisdiction to enforce the liability of stockholders in foreign corporations, and citing the New Haven Horse Nail Co. case, says: "The case at bar furnishes a strong illustration of the propriety of this course. If the plaintiff, as a creditor of the Kansas corporation, without obtaining any previous judgment in Kansas establishing the defendant's liability as a stockholder, can maintain an action directly and in the first instance against him in Massachusetts, for the purpose of charging him as a stockholder, under the qualified liability set forth in the declaration, then it would follow that the plaintiff might also institute a similar action against him in California, or in any number of other States where service could be obtained. The plaintiff might also institute similar actions for the same debt in different States against other stockholders. In such case it is probable that a judgment against one stockholder without satisfaction would be no bar to actions against others, but it is obvious that the defendants in such actions might be put to great inconvenience in ascertaining, and indeed might find it practically impossible to ascertain, what steps the plaintiff might have taken against other stockholders in different States. A dishonest creditor might possibly recover several times over against different stockholders in different States, before they respectively could ascertain the facts. Likewise the defendant, if compelled to pay under a judgment recovered in one State, would find it difficult, if not impossible, to enforce a contribution from other stockholders residing elsewhere. Moreover if the plaintiff might maintain such actions against the defendant, and against other stockholders in different States, until he should finally recover satisfaction, other creditors of the Kansas corporation might also do the same. If every creditor of a Kansas corporation, which has no property with which to respond to a

judgment obtained by such creditor against it in Kansas, may therefore, without any further proceedings in that State to charge the stockholders, maintain an action against every stockholder in every State of the Union where service can be obtained, and pursue such action until satisfaction is obtained from some stockholder in some State, it is obvious that a large amount of litigation might ensue, under which substantial justice, as among the stockholders, could not be worked out."

Other considerations are urged for the rule adopted in Massachusetts, and we think the opinion lays down the rule that our Supreme Court should, and will, adopt.

The case quoted from was before the Appellate Court of the First District of this State, and was discussed and approved in the case of Lamson v. Fowler, the opinion in which is set out in this brief. It will be claimed that the Appellate Court of the Third District of this State in Tuttle v. Bank of Republic, held the liability could be enforced in this State. It is true that opinion is opposite to that of the Appellate Court of the First District. We hope, however, the court will read that opinion carefully, for to our minds it is remarkable. We think it confuses the liability with the remedy, and it utterly ignores the question of jurisdiction which was raised by appellant's counsel, as well as many other questions, and virtually amounts to saying, we approve the judgment, and do not think it necessary to pass upon the other question raised.

Questions unsettled in this State, and which the Supreme Court of Massachusetts has taken pages to discuss, deeming them of great importance, and questions which have engaged the attention at great length of other courts, including the Appellate Court of the First District, it does not deem of sufficient importance to notice.

The facts in connection with this very corporation and the appellee will show the soundness of the reasoning of the Supreme Court of Massachusetts. Six other suits like this are pending at this moment in Woodford County, in the court from which this appeal is taken; three in Tazewell County,

one in Peoria County, and two in Cook County; all brought by appellee by reason of the same judgment against stockholders in the Husted Investment Company.

We have no doubt that our Supreme Court, when the question comes before it, even if it holds that the constitution and laws of Kansas create a liability, will hold that before any recovery can be had in this State, either in law or in equity, the courts of Kansas must adjudicate the relations of the stockholder to the corporation and toward the creditors, and determine the amount of the liability of the stockholder, and we think that this is clearly indicated by the trend of the decisions of our court in Patterson v. Lynde, 112 Ill. 196, and Young v. Farwell, 28 N. E. Rep. 845.

This would be the enforcement of the judgment of a sister State and not of the statutory liability.

Messrs. H. C. FULLER and R. H. RADLEY, for appellee.

Certainly all stockholders resident in Kansas are subject to its laws, and can not free themselves from their liability as stockholders in a corporation of that State, by a temporary or permanent absence therefrom.

The laws of that State fix all contracts executed therein, and the purchase of shares of stock in a corporation of that State is a contract made there, and governed by its laws, the same as a promissory note made in that State. If a contract made in that State imposes certain obligations, why should a change of residence alter them? Spelling on Private Corporations, Sec. 913.

We do not care to discuss this subject much further than has been done in the case of The National Bank of the Republic v. Sidney Tuttle, which has lately gone to the Appellate Court of the Third District from Bloomington. We append hereto the ruling of Judge Sample, of the Appellate Court of the Fourth District, who passed upon the pleadings in that case, and also file herewith a certified copy of the opinion in the same case, decided at Springfield in October last; possibly, also, an abstract of the record in that case and the brief of appellee therein.

We have never looked upon the decision of Lamson v.
Fowler (which is copied in full in appellant's brief, and was
also copied in full in the brief of appellant filed in the Sid-
ney Tuttle case in the Appellate Court), as an authority in
this cause, for the reason that the judgment obtained against
the Kansas corporation (and which was the foundation of
that chancery suit) was rendered in the State of Illinois. In
our view, the laws of Kansas do not contemplate, for in-
stance, that a creditor in that State can go into the State of
California, obtain a judgment there against a Kansas corpo-
ration whose president is found temporarily in California,
have an execution issue in California, and then sue a stock-
holder in Kansas, basing his action upon the California
judgment. The laws of Kansas, doubtless, contemplate a
judgment and an execution in the State where the corpora-
tion has its domicile. And yet, in the case of Lamson v.
Fowler, no judgment was had in Kansas, and no proceeding
taken in that State to evidence the insolvency of the corpo-
ration. If, then, the object in view of the Kansas laws was
not observed in Lamson v. Fowler, how can it be said to be
an authority?

MR. JUSTICE LACEY. This was an action of assumpsit
commenced by the appellee against the appellant in the
County Court of Woodford County, Illinois, and proceeded
to trial before a jury, resulting in a verdict and judgment
for appellee in the sum of $350, from which judgment this
appeal is taken.

The appellee is a corporation duly incorporated under the
United States Banking Act, in 1889. The appellant was a
stockholder in the Husted Investment Company, a corpora-
tion under the laws of the State of Kansas, duly incorpo-
rated in 1888, owning three and one-half shares of its stock,
of $100 each, and had been such stockholder for over two
years. The Husted Investment Company was not a relig-
ious, charitable, or railroad corporation, and was organized
for the purpose of transacting business for profit, and was
authorized by its charter " to accumulate and loan funds,
etc., etc., and to buy and sell, both as principal and agent,

bank stocks, bills, notes and other securities; to carry on business of a loan and trust company, and in general to have, hold and to do all things necessary and proper in the premises."

The foundation of the action was that the appellee on the 10th November, 1891, recovered a judgment in the State of Kansas, District Court of Wyandotte County, against the Husted Investment Company, for $5,288.80, upon an indebtedness existing to appellee by said company on and since July 21, 1890, and that execution had been issued and returned " *nulla bona.*"

At the time of the accruing of the indebtedness and rendition of the judgment the appellant was and ever since had been the owner of the said three and one-half shares of stock in said company.

The Husted Investment Company, as averred in the declaration, had been insolvent for seven months last past. The appellant was a resident of the State of Illinois and had been from the five years last past, and had not during the time been in the State of Kansas, and owned no property therein. The liability was claimed by virtue of the appellant being a stockholder in the Husted Investment Company under the constitution and laws of the State of Kansas. The appellant pleaded the general issue and eleven additional pleas, to all which a demurrer was sustained by the court below and the issue tried on the plea of the general issue, appellant obtaining his pleas, to which demurrer was sustained.

The cause of action is founded on Sec. 2, Art. 12, of the Constitution of Kansas, and on Sec. 32, Chap. 23, chapter on Corporations, and Sec. 46 of the Statute of Kansas, as follows: Constitution, " Sec. 2. Dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder, and such other means as shall be provided by law; but such individual liabilities shall not apply to railroad corporations or corporations for religious or charitable purposes."

Sec. 32 of Statutes: "If any execution shall have been issued against the property or effects of a corporation, except a railroad or a religious or charitable corporation, and there can not be found any property whereon to levy such execution, then execution may be issued against any of the stockholders, to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon; but no execution shall issue against any stockholder, except under an order of the court in which the action, suit or other proceeding shall have been brought or instituted, made upon motion in open court, after reasonable notice in writing to the person or persons sought to be charged; and upon such motion, such court may order execution to issue accordingly; or the plaintiff in the execution may proceed by action to charge the stockholders with the amount of his judgment."

Sec. 46. "No stockholder shall be liable to pay debts of the corporation beyond the amount due on his stock, and an additional amount equal to the stock owned by him."

The statute was adopted some nine years later than the constitution and long before the company was organized.

It is insisted that the provision of the constitution above set out was not self executing, and could not have any force and effect until its provisions were enacted into law by the statute of Kansas; that it should be read and treated as directory to the legislature, and that the words "dues from corporations *shall* be secured by individual liability," should be construed "*may*" be so secured.

We are not inclined to take that view of the character of the section of the constitution in question. A constitution may be and often is drawn with a view of submitting the matter to the legislature by enactment, to give it vital force and effect, and to leave it in abeyance until such time as the legislature sees fit to act; but on the contrary, framers of constitutions often enact complete legislation, and there seems in modern times more of a tendency to adopt such a course than formerly. Where a principle is regarded as fundamental and of vital importance, the framers of constitu-

tions are apt to fix the matter irrevocably by complete enactment, intending to put it out of the power of a legislature to alter or change it, or to render it nugatory by non-action.

The power of a constitutional convention to legislate, we suppose, can not be questioned; it may go as far it wills in that direction. In any given case it is only a matter of intention to be deducted from the natural import of the language that we have to deal with.

In our view, the language seems clearly to indicate an intention on the part of the constitutional convention of Kansas to so frame the instrument as to secure the debts of a corporation of the class named, by the individual liability of the stockholder to an amount equal to the quantity of the stock owned by him, but to leave it to the legislature to provide for such other means of security as it should judge most conducive to the public interest.

In such case the legislature might legislate and direct the mode of enforcing such provision, as it did in this case; and such procedure must be followed, especially in the State of Kansas. But if the legislature should fail to provide a remedy, then the right would still remain, and the common law would supply one. The creditors could not be deprived of their assured security by any omission of the legislature to enact a remedy.

As a sample of legislation by a constitution we cite The People v. Rumsey, 64 Ill. 44, and cases there cited; see also Cook on Stockholders, Sec. 213.

The legislature of Kansas recognized the binding effect of the constitution by simply providing a remedy for its enforcement without specifically re-enacting the provision relating to the liability of stockholders. The Supreme Court of the State of Kansas assume the liability of a stockholder under this section of the constitution and the statute (Abbey v. Dry Goods Co., 44 Kansas, 415), and the courts of Kansas hold that a stockholder is liable severally and individually and so enforceable against each stockholder.

The appellant, by his attorney, raises the point that the

appellee can not sue and enforce the liability of a stockholder in this State in any other court than in equity, under our statute of July 1872, Sec. 25, Chap. 32, R. S., entitled Corporations. We do not deem this point well taken. Our statute only applies to corporations created under that act, and to Illinois corporations, and has reference to insolvent corporations, and closing them and winding up their business.

According to the laws of Kansas the stockholder was individually liable and could be sued by the creditor in his own name, after obtaining judgment against the corporation, and having execution issued and returned, "no property found." In that event the stockholders became individually liable under the statute and laws of Kansas and could be sued by the creditors in his own name. An action of law would be the proper remedy in Kansas, and if correctly applied in such case, its recovery here would be the same, unaffected by our corporation act of 1872.

No question of the kind of action and procedure could arise. A suit at law would be the proper action to bring. Wincock v. Turpin, 96 Ill. 135.

We perceive no reason why this suit may not be maintained in this State. In Kansas it could be, and the liability is fixed, and no question of pro-rating the amount of the indebtedness arises. The appellant owed an amount equal to his stock and appellee had a right to collect. It is not like the case of Patterson v. Lynde, 112 Ill. 196. In that case the remedy was in equity; the liability was to the corporation and not to the debtor. It may be, Judge Scholfield says, a remedy "can be enforced in a different way by a debtor against a delinquent stockholder in other States and different laws." In Kansas this very thing can be done and why not here? See Tuttle v. Bank of the Republic, 3d Dist., filed October 3, 1892; Flash v. Conn., 109 U. S. 371. The case of Lamson v. Fowler, 44 Ill. App. 186, is not in point, as, in that case, the creditor obtained no judgment in Kansas against the debtor corporation before proceeding in this State. The case of North American. v. Rindge, 27 N. E. Rep. 1015 (Mass.), appears to be in point, but we fail to fully appre-

ciate the reasons given in the opinion for the refusal to allow the suit to be maintained in Massachusetts. The final conclusion of the opinion is that "a large amount of litigation might ensue, under which substantial justice, as among the stockholders, could not be worked out." But what has a stockholder in Kansas, after judgment obtained there against the corporation, and return of execution no property found, to do with this question? It is a stockholder's duty to first pay, and then demand a pro-rating with other stockholders and the corporation. The same argument of inconvenience might be made of a dozen or more securities on a promissory note scattered in different States. They might all be sued separately in different States, and it might be very difficult afterward to get pro-rating with each other or satisfaction of the principal maker; yet, who would say that they should be exempt from suit in their new domicile if they remove from the State?

Culver v. Third Nat'l Bank of Chicago, 64 Ill. 538, was a similar case in principle to this in respect to the right to bring a suit at law, only the suit was brought under the laws of this State and by the charter and law no suit had to be first brought against the corporation. The stockholder could be sued in the first instance. Like the suit under consideration, as the suit against the corporation had already been brought in Kansas, the stockholder was liable in a suit by the creditor. The court says it is no objection that the stockholder may be subjected to several suits, as he can in no event be answerable for more than the amount "of his stock." The appellant's subscription to the stock of the Husted Investment Company was made with direct reference to, and in view of the organic and statutory laws of Kansas, and by such act he offered his personal security to any future creditor to an amount equal to his stock. The company to whose stock he had subscribed, did not hesitate to avail itself of the comity allowing it to deal in other States, and to go into the State of Illinois and contract debts. The agreement of such stockholder, by the act of

subscription made in view of the laws of Kansas, was to pay the amount for which he agreed to be liable to the creditors of the company before asking for a pro rata settlement on his own account with the other stockholders.

That was a matter with which the creditor was to have no concern. Is there anything in equity and justice opposed to the enforcement of such a contract in any State of the Union?

By removing from the State in which the contract was made, ought such a debtor be allowed to escape a liability voluntarily assumed, on the plea that he might be subject to inconvenience in a future attempt to recoup himself out of the other stockholders—his partners—for any amount which, on a final settlement of the company affairs, might be adjudged due him?

It seems to us there could scarcely be a case appealing more loudly for the extension of that comity due from one State to a sister State of the Union than in the present.

The appellant could have the same defense in the courts of this State that he would have had in Kansas had he been sued in that State. There is nothing in the laws of this State, or the settled policy or practice of our courts, antagonistic to the laws of Kansas in respect to the enforcement of the liability of a stockholder in favor of a creditor. On the contrary, it has often been done in this State in action at law under former laws. Schalucky v. Field, 124 Ill. 617, and cases there cited. The courts of this State, as a policy, are free to enforce the collection of indebtedness of a stockholder in accordance with his liability. If liable in such a way as that equity is the only proper procedure, then the creditor must pursue his remedy in such court. Rounds v. McCormack et al., 114 Ill. 252.

In Wincock v. Turpin, *supra*, it is held that "when the statute has disclosed that the liability of the stockholder shall be to the depositor, it would seem that it might be supposed other persons were precluded from interfering or intermeddling in a matter which alone interests or concerns the depositor." And again, "the liability is legal, is cre-

ated by the statute, and must be controlled by its provisions. When the statute creates a liability, the remedy is invariably at law unless the statute provides for proceedings in equity." A receiver appointed for a corporation in another State by a court of equity to wind up its affairs would be allowed to sue in the courts of this State "as a matter of interstate comity," to prosecute actions at law to recover unpaid balances due on capital stock. Patterson v. Lynde, 112 Ill. 196, and cases cited.

The suit under consideration is being prosecuted under the laws of Kansas, which the courts of this State will enforce as a matter of comity among States in the same manner as though the same laws existed here. And if the same law existed here as in Kansas, the remedy would be at law, as shown by the above citations. We therefore think a court of law is the proper court in which to bring the action.

The appellant objects to a number of rulings of the court in regard to the pleadings, and on trial, on the admissibility and competency of evidence. But nearly all the questions have been passed on except a very few, and need not again be noticed.

The ninth plea, to which a demurrer was sustained, attempted to raise an issue as to the validity of the claim of appellee against the Husted Investment Company, in that it was an indebtedness incurred by the company to the appellee by indorsing and selling to it, as agent of another party, a promissory note on which indorsement the judgment in question was founded, the investment company receiving the proceeds of the note from appellee and passing it over to its principal, the holder of the note.

It is insisted that the transaction was *ultra vires* as to Husted Investment Company.

While we deem the consideration good and not subject to any defense by the Husted Investment Company, and within the scope of its powers while dealing with third persons, we hold that the appellant could make no defense to this action on the grounds sought. He is a member of

the corporation and is concluded by the judgment against it. In the work of Cook, upon stockholders, it is laid down as a rule of law, as follows:

"Sec. 222. In general, the judgment in these cases against the corporation is conclusive as to the amount and validity of the creditor's claim. Consequently, when suit is brought to enforce the shareholder's statutory liability, that judgment can be impeached only for fraud and collusion, or for want of jurisdiction." See also Buchanan v. Meisser, 105 Ill. 638; Thompson v. Meisser, 108 Ill. 359; Shalucky v. Field, 124 Ill. 617; Fuller v. Ledden, 87 Ill. 310.

It is insisted that because the Supreme Court of Kansas in Howell v. Mangelsdorf, 33 Kan. 194, held that "the liability is only secondary to the corporation," it follows that appellant could make the defense to the cause of action after judgment against the corporation. This decision only follows the statute, which requires judgment to be rendered in favor of the creditor and execution to issue, and return thereof *nulla bona*, before suit against the stockholder can be instituted.

The suit is secondary in this sense, and in that the judgment against the corporation is not a judgment against him. The stockholder would not be precluded from making a defense if he had a valid one. He may have paid in some legal way a sum equal to his stock, or he might show that he did not own the stock in the time and manner required by the constitution and laws to make him liable, and other possible defenses, but not, we apprehend, that the corporation did not owe the debt represented by the judgment against it. This disposes of that plea, and the alleged error of the court in rejecting evidence tending to impeach the validity of the judgment for the cause named.

The sixth, seventh and eighth pleas were a mere attempt to plead matters of law that have been disposed of already in this opinion.

The eleventh plea attempts to deny the truth of the sheriff's return. Under the laws of Kansas the sheriff's return would be conclusive in the absence of fraud and

collusion, which are not averred in the plea. The second additional plea is bad in attempting to set up, as a ground of defense, want of diligence in not attempting to collect the judgment off the four persons joined in the judgment with the improvement company. The Kansas statute requires nothing of the kind. The law of Kansas does not require the corporation to be dissolved before the stockholder can be required to pay, as the third plea averred and attempted to set up as defense. It was therefore bad.

On the trial, appellant objected to the introduction of the judgment in evidence. First, on account of it not being in form a judgment. Second, on account of there being a variance between it and the declaration. The judgment recites the finding of the plaintiff, on the cause of action, in the sum of the judgment and certain costs of suit, and adds, " whereof let execution issue." While this judgment might not be in the exact form in this State that is required, it appears to be in the form followed in Kansas and has all the elements of a judgment.

The amount due is found, and an order for execution to collect it. This is equivalent to formally stating that the " plaintiff have and recover from the defendant " the amount found due. We think the court did not err in treating it as a judgment.

Another objection is that the execution, in being issued against the goods and chattels of the Husted Investment Company, did not follow the judgment and was therefore invalid. This, we think, while an irregularity, did not render it void. Except for the error hereinafter mentioned the evidence would have shown a cause of action. It will therefore be unnecessary to notice any alleged error in regard to instructions, the admissibility or rejection of other evidence, or the objection made to the introduction in evidence to the jury of the opinions of the Supreme Court of the State of Kansas rendered in certain cases, and the comments thereon by appellee's attorneys to the jury.

There is, however, a more serious question in the case, and that is, the question of variance between the declaration and

proof as respects the admissibility of the judgment in favor of appellee against the Husted Investment Company, rendered in the State of Kansas.

The statute of that State does not appear to contemplate the joinder by a creditor of any debtor of the company in a suit against it, but nothing in the statute prohibits it being done. In this case it so happened, that in the claim of the appellee against the above named corporation, there were other parties jointly indebted with the latter and were joined in the action of the former in its suit against it, and final judgment was obtained against all such parties jointly. Such joinder, however, could not affect the right of the appellee under the statute of the State, and so far as such rights are concerned, the name of the parties joined in the same suit and judgment may be treated as non-consequential and immaterial.

But a more serious question arises when we come to treat of the question of variance.

The declaration described a judgment as against the Husted Investment Company alone, when the one offered in evidence appeared to be rendered against said company and several others jointly.

Counsel for appellant, at the time of its being offered in evidence, objected to its introduction on the ground that such judgment was a variance between it and the one set out and described in the declaration. The court overruled the objection and allowed it to be read in evidence, to which ruling the appellant by his counsel at the time excepted. Was there a variance ? Is a declaration describing a judgment against one only supported by the production of a judgment against that one and another, or others ?

It appears, according to the ruling of the Supreme Court of this State, such a condition constitutes a material variance and forbids the introduction of such evidence under such a declaration. Mann v. Edwards, 138 Ill. 21, and cases cited.

The court then erred in admitting the judgment in evidence under the declaration without amendment.

It being the foundation of appellee's action, without which being introduced in evidence the appellee must fail of recovery, the court erred in its ruling in a material matter requiring reversal. The judgment of the court below is therefore reversed and the cause remanded.

*Judgment reversed and cause remanded.*