[No. 2135. Decided February 14, 1896.]

HOLMES & BULL FURNITURE COMPANY, *Respondent*, v.
JOHN B. HEDGES, *County Treasurer*, *Appellant*.

CONSTITUTIONAL LAW — SELF-EXECUTING ENACTMENTS — ELECTIONS TO
AUTHORIZE INCREASE OF SCHOOL INDEBTEDNESS — RIGHT OF WOMEN
TO VOTE — SPECIAL LEGISLATION.

The provision of art. 8, § 6, of the constitution, providing that no school district shall become indebted to an amount exceeding one and one-half per centum of the taxable property in such school district, without the assent of three-fifths of the voters therein voting at an election to be held for that purpose, is self-executing and sufficient, without further legislative sanction, to authorize the voters to give or withhold assent to the incurring of indebtedness, in view of the fact that the legislature has made provision for the organization of school districts and the holding of general and special elections therein.

Elections for the purpose of authorizing an increase of the debt limit of school districts may properly be held under the general provisions of law concerning the holding of annual and special school elections.

The act of March 27, 1890, entitled "an act to establish a general uniform system of common schools in the State of Washington," is

applicable to school districts organized under an act relating to schools in cities of ten thousand or more inhabitants, excepting in so far as the two acts may be inconsistent.

Women have the right to vote in school elections in cities of ten thousand or more inhabitants held for the purpose of authorizing an increased debt limit, under art. 6, § 2 of the constitution providing that there shall be no denial of the elective franchise at any school election on account of sex, and under Laws 1889-90, p. 377, § 58, providing that every person, male or female, possessing certain qualifications, shall be legal voters at any school election.

The act of the legislature providing for school districts in cities of ten thousand or more inhabitants is not unconstitutional on the ground that it affords a different and better system of education to such cities which amounts to special legislation.

Appeal from Superior Court, Pierce County — Hon. W. H. PRITCHARD, Judge. Affirmed.

*Coiner & Shackleford,* for appellant.

*Snell & Bedford,* for respondent.

The opinion of the court was delivered by

GORDON, J.—This proceeding was instituted to compel the appellant, the county treasurer of Pierce county, to pay a warrant of School District No. 10, held by respondent, or to endorse upon such warrant the statutory endorsement, "Presented for payment and not paid for want of funds," if appellant as treasurer had not sufficient available funds to pay it.

The application for the writ shows that at the time of the creation of the debt represented by the warrant in question, School District No. 10 aforesaid was in debt largely in excess of one and one-half per centum of the taxable property within said district. Also, that the proper officers of the district had submitted to the legal voters therein, at an election held for that purpose, a proposition to permit the district to become indebted to the amount of two per cent. of its assessed valuation. It further appears that at such election

more than three-fifths of the voters had voted in favor of the proposition. It is conceded that if this enabled the district to incur debts to the amount of two per cent. of the taxable property, then the warrant of respondent is valid and the writ of mandate prayed for should be awarded. The appellant demurred to the petition in the court below and, his demurrer having been overruled, an appeal was taken which brings the case to this court.

Section 6, art. 8, of the state constitution provides that:

"No county, city, town, school district, or other municipal corporation shall for any purpose become indebted in any manner to an amount exceeding one and one-half per centum of the taxable property in such county, city, town, school district, or other municipal corporation, without the assent of three-fifths of the voters therein voting at an election to be held for that purpose."

The objections made by the appellant to the legality of the warrant in question are: First, that the constitutional provision (above quoted), in so far as it provides for the taking of the assent of the voters at the election, is not self-executing, and that it is necessary that the legislature should assent to the holding of such election. Second, that there is no provision authorizing women to vote at such an election, and that therefore an election held at which women were allowed to vote, as in the present case, would be void. Third, that the act under which School District No. 10 was incorporated is unconstitutional, in that it is special or class legislation.

(1) The first of these objections is most strongly relied upon by counsel for appellant, and it is not without some difficulty that we have reached a conclusion. After an extended examination of the subject, we are

unable to agree with the contention of the appellant, that ."it is necessary that the legislature shall assent to the holding of such election." We think that if the legislature has, by general enactment, made provision whereby the officers of school districts may call elections, and has determined the character of the notice to be given thereof, and the manner for conducting the same and declaring the result, that these provisions in themselves are sufficient; that the right to give or withhold assent to the incurring of the indebtedness belongs under the constitution to the voters without other legislative authority or permission; that to this extent at least the provision of the constitution in question is self-executing. The provision of the constitution should be construed as amounting to something more than a limitation upon legislative discretion. True, the provision in and of itself is silent as to the manner of holding such elections, but the legislature by general enactment has provided the manner for calling and conducting both annual and special school elections; and indeed like provisions existed in the territorial statutes at the time of the adoption of the constitution, and these provisions were by the constitution continued in force, (subject, of course, to the power of the legislature to alter or repeal them); of which provisions it is only fair to presume that the framers of that instrument had full and necessary information. The contention of the appellant, if upheld, would be in effect to insert after the word "assent" in the constitutional provision the words "of the legislature and." We think neither reason nor necessity requires that this be done.

Sec. 1, art. 9, of the constitution declares that "it is the paramount duty of the state to make ample provision for the education of all children residing with-

in its borders." It must not be forgotten that school districts throughout the Union are provided for, and were in existence here under territorial legislation at the time of the adoption of our state constitution; and while it is true that there must be a district lawfully created and organized upon which the provision of the constitution can operate, and that the creation and organization of such district must rest entirely with the legislature, nevertheless, in view of the language of § 1, art. 9, above quoted, and of the universal legislative practice, it was not to be supposed by the framers of the constitution that the legislature would fail to make provision for the organization of school districts. But, however that may be, the legislature has made ample provision for their organization and also for the holding of general and special elections therein. We think that having provided the means for enabling the voters of any school district to determine for themselves the propriety of extending the debt limit of the district, no further legislative action was necessary, and that with the aid of the machinery so provided the constitutional provision under consideration becomes operative and effectual.

In *Schertz v. First National Bank*, 47 Ill. App. 124, the court say:

"A constitution may be and often is drawn with a view of submitting the matter to the legislature by enactment, to give it vital force and effect, and to leave it in abeyance until such time as the legislature sees fit to act; but on the contrary, framers of constitutions often enact complete legislation, and there seems in modern times more of a tendency to adopt such a course than formerly. *Where a principal is regarded as fundamental and of vital importance*, the framers of the constitutions are apt to fix the matter irrevocably by complete enactment, intending to put it out of the power of a legislature to alter or change it, or to ren-

der it nugatory by non-action. The power of a constitutional convention to legislate, we suppose, cannot be questioned; it may go as far (as) it wills in that direction. In any given case it is only a matter of intention to be deducted from the natural import of the language that we have to deal with."

In Cooley's Constitutional Limitations (5th ed., at page 100), the learned author says:

"A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law."

We think that the framers of the constitution intended by § 6, art. 8, not merely to define, but to confer upon the voters of a school district, city or county, when legally organized the right to determine for themselves the propriety of incurring additional indebtedness, and for that purpose to make use of the general machinery which the law afforded for holding and conducting elections beyond this, and that the express assent of the legislature for that purpose was not considered necessary. The provision, " as far as it extends has the form and properties of a law declarative of the will and purpose of the sovereignty." *Miller v. Marx,* 55 Ala. 322.

It is legislative in its character and was not intended merely as a limitation upon legislative power. No case has been cited, nor have we been able to discover one, bearing directly upon this branch of the question; but we may cite as bearing upon the principle involved: *People v. Bradley,* 60 Ill. 390; *People v. Hoge,* 55 Cal. 612; *Friedman Bros. v. Mathes,* 8 Heisk. 488; *People v. Roberts,* 34 N. Y. Supp. 641; *Wells v. Common-*

*wealth*, 22 S. W. (Ky.) 552; *Parker County v. Jackson*, 5 Tex. Civ. App. 36 (23 S. W. 924); *Sanders v. Commonwealth*, 18 S. W. (Ky.) 528; *Beecher v. Baldy*, 7 Mich. 487.

But it is further contended that the general provisions of law concerning the holding of annual and special school elections are not applicable to an election for the purpose of increasing the debt limit, and that they refer merely to elections, the power to call which has been specially conferred upon school districts.

Section 6 of the act of March 10, 1893 (Laws 1893, p. 268), after providing the time for holding the annual elections, contains this further provision:

"Special school elections shall be called and conducted in the manner provided for calling and conducting annual elections."

Section 822, Gen. Stat., provides that notice of a school election must be given by the district clerk for at least ten days prior to the election. Also, that "said notice must designate the place of holding the election, day of holding the election, hours between which polls are to be kept open, names of offices for which persons are to be elected, and terms of office, *with a statement of any other questions which the board of directors may desire to submit to the electors of said district.*" Provision is also made in that act for conducting the election and canvassing the returns, and we think that the provisions of the act of March 27, 1890 (Laws 1889-90, p. 348), entitled "An act to establish a general uniform system of common schools in the State of Washington," are applicable to District No. 10, notwithstanding that said district is organized under an act relating to schools in cities of ten thousand or more inhabitants, excepting only in so far as said last

mentioned act may be inconsistent with or provide a different method of procedure than that provided for in the act of March 27, 1890.

But were we to agree with the contention of appellant's counsel in this particular, viz., that the general provisions of law relating to school elections, annual and special, should be restricted to such elections only as are particularly enumerated by the statute, we think it would then follow that the election could be held in accordance with the law providing for general elections in the same territory.

In *People v. Dutcher*, 56 Ill. 144, the court say:

"Where legislation is adopted in reference to the action of an incorporated body and no mode is prescribed in which it shall be performed, *the presumption must be indulged that it is intended that the body shall act through its officers and in the course usually adopted and authorized by the law governing the action of the body.* And this being the rule, when the legislature has authorized this township as a corporate body *to hold an election,* and has prescribed no mode, a majority of the court hold that it was designed to authorize it to be in the manner township elections are required to be held in the election of their officers, and not under the general election laws. And it appears that this election was conducted in conformity to the law of its organization."

In *People v. Hoge, supra,* the supreme court of California had under consideration § 8, art. 11, of the constitution of that state, providing that, "Any city containing a population of more than one hundred thousand inhabitants may frame a charter for its government, . . . . by causing a board of fifteen freeholders . . . to be elected *by the qualified voters of such city at any general or special election.*" No provision was made for holding such an election, and in this respect that section may be likened to the sec-

tion of our constitution here involved.   An election of
freeholders was held in the city of San Francisco, not
pursuant to any act passed by the legislature after the
adoption of the constitutional provision; but said
election was called by the board of election commis-
sioners pursuant to legislative enactments passed
prior to the adoption of said constitutional provision.
It was contended in that case that legislation was
needed to give effect to § 8, art. 11, of the constitution,
but the court held otherwise, saying:   "The only con-
dition imposed by the foregoing constitutional pro-
vision to make such election valid, is that the freeholders
must be chosen *at a general or special election,* and in
this case that condition was fulfilled."

So in the case at bar.   "The condition imposed"
(by § 6, art. 8, of the constitution of this state), to
make such indebtedness valid is " the assent of three-
fifths of the voters therein voting at an election to be
held for that purpose."   So that whether we regard
the language of the general provisions of law appli-
cable to school elections as sufficient to warrant the
proper officers of a school district to submit this ques-
tion to the legal voters of their district or otherwise,
the conclusion in either case is that the election hav-
ing been held in the manner provided by law for the
holding of all school elections, either general or special,
and the requisite number of the voters having given
their assent thereto, such assent is binding upon the
district and is sufficient for the purposes of the con-
stitution.

But counsel for the appellant in their brief inquire:
"If the assent of the legislature is not necessary to
enable a school district with the assent of three-fifths
of its voters to increase its debt limit, why is it neces-
sary to have the consent of the legislature to the

validation of debts when three-fifths of the voters assent to such validation after the incurring of the indebtedness ? ''   We think 'the distinction is clear between an act conferring authority upon a municipal corporation to ratify the attempted incurring of an indebtedness and a provision of the statute or of the constitution which points out the manner in which the indebtedness may in the first instance be legally incurred.

In *Hunt v. Fawcett*, 8 Wash. 396 (36 Pac. 318), this court, in construing an act of the former character, observes:

" This statute is essentially a curative statute, and is only operative upon past transactions.   It grants no license to create debts, but it provides in clear and explicit language the only method whereby indebtedness honestly attempted to be created for legitimate purposes may be ratified.''

A different question was presented in the case of *Baker v. Seattle*, 2 Wash. 576 (27 Pac. 462).   In that case this court was dealing with a provision of a city charter granted by the territorial legislature before the adoption of the constitution.   Sec. 3 of the act of February 1, 1888 (Laws 1887–8, p. 74), provided, " That hereafter   .   .   .   indebtedness shall not be created *in excess of one per centum* upon the assessed valuation of property except for the purposes of purchasing, paying for or constructing public buildings for the use of such counties, cities, school districts or incorporated towns or villages,'' etc.

Section 5 of the act of February 26, 1890, (Laws, 1889–90, p. 225) provided,

" That any indebtedness now owing by any such city or town, contracted strictly for municipal purposes, *whether the same exceeds the amount which such*

*city or town was authorized to contract under its charter or not,* is hereby validated and declared to be a binding obligation upon such city or town when the only ground of the invalidity of such indebtedness is that it exceeds the amount authorized by the charter of such city or town: *Provided,* That if said indebtedness exceeds one and one-half per centum, including present indebtedness, upon the taxable property therein, to be ascertained as hereinbefore provided, then such indebtedness shall not be deemed to be validated by this act until three-fifths of the voters in such city or town shall assent to the same, at an election held for that purpose, in the manner provided by § 2 of this act."

It will be observed that in that case the limitation upon the power of the corporate authorities of the city of Seattle to incur indebtedness was imposed by a territorial statute. The constitution at that time was not in force. Under these conditions this court, on page 587, said:

"We are therefore constrained to view this case as one within the principle long sustained by the courts, that where a municipal corporation has done an act beyond its statutory powers, *but within the powers which it was competent for the legislature to have conferred upon it,* the act may be validated by a curative statute."

While there may be found in the course of the lengthy opinion in that case some general expressions which might at first glance seem to be at variance with the views here advanced, we are satisfied that a careful reading will show that no conflict exists, and that the conclusion reached harmonizes with what we have here decided.

(2) As to the objection that there is no provision authorizing women to vote at such an election, the position of counsel for appellant is, that the act in relation to schools in cities of ten thousand or more

inhabitants contains nothing whatever in reference to the qualifications of voters, and that a person offering to vote at an election within such districts must possess the qualifications prescribed by the constitution.

Section 1, art. 6, of the constitution prescribes the qualifications of voters, and provides that all male persons possessing these qualification shall be entitled to vote at all elections.

Section 2 of that article is as follows:

" The legislature may provide that there shall be no denial of the elective franchise at any school election on account of sex."

Section 58 of the act of March 27, 1890, entitled "An act to establish a general, uniform system of common schools," provides that " every person, male or female," possessing certain qualifications, shall be legal voters of any school election.

As observed in connection with the questions already considered in this opinion, we think that the provisions of that act are applicable to schools in cities of ten thousand or more inhabitants, and, by virtue of § 58, women were legally entitled to vote at the election in question.

(3) The appellant insists that by the the terms of this act under which District No. 10 was incorporated, a different and better system of education is provided for cities than was enjoyed by the rest of the state; that, therefore, the act is special legislation and in contravention of the provisions of the constitution. With this contention we cannot agree. As was held in *Landis v. Ashworth*, 31 Atl..(N. J.) 1017, the constitution did not require the legislature to provide the same means of instruction for all children in the state.

"A scheme to accomplish that result would compel either the abandonment of all public schools designed for the higher education of youth, or the establishment of such schools in every section of the state within reach of daily attendance by all the children there residing."

We think that the cases cited by counsel for the appellant upon this branch of the controversy are not in point and that the act in question is constitutional.

The judgment is affirmed.

DUNBAR and ANDERS, JJ., concur.

HOYT, C. J., concurs in the result.