Gray, et al, v. Taylor et al.

---

[No. 1350, September 1, 1910.]

S. T. GRAY, et al, Appellants, v. ROBERT H. TAYLOR, et als, Appellees.

### SYLLABUS.

1.   There is no legislative requirement that any bill shall receive the signature of the respective presiding officers of the two houses.   The journals of the two houses may be judicially noticed in aid of the act.

2.   In the absence of any evidence to the contrary it is assumed that the executive acted lawfully and his message stating that he had allowed the act to become law by limitation will be assumed to imply the receipt by him of the act more than three days prior to the message.

3.   Petition for election on proposition to remove county seat held sufficient.

4.   By the terms of the statute, (Laws 1909, Chapter 80), it is impossible to have registration within the time following the petition and the election.

5. Held that only one illegal vote was cast and that was in favor of Lincoln.

6. Subsequent repairs to public buildings at county seat should not be counted in determining whether cost of buildings was less than $30,000.

7. Laws 1909, Chapter 80, not special or local by reason of the twenty mile limitation.

8. Held that ballot used at election for removal of county seat, which read "For County Seat..................." was in exact accordance with C. L. 1897, sec. 631.

9. Whether this is a collateral attack upon the location of the county seat, quaere.

Appeal from the District Court for Lincoln County before MERRITT C. MECHEM, Associate Justice. Affirmed.

T. B. CATRON and GEORGE B. BARBER for Appellants.

Laws 1909, Chapter 80, is local and special legislation in violation of Springer Act. People v. Supervisors, 43 N. Y. 16; Matter v. Henneberger, 155 N. Y. 424, 427; People v. O'Brien, 38 N. Y. 193; Ferguson v. Ross, 126 N. Y. 464; Com. v. Patten, 88 Pa. St. 260; Davis v. Clark, 106 Pa. St. 260; McCarthy v. Com. 110 Pa. St. 246, et seq.; Montgomery v. Co., 91 Pa. St. 125; Devine v. Commissioners, 84 Ill. 591, et seq.; State v. Herman, 75 Mo. 346; Scowdens App. 96 Pa. St. 424-5; Klokke v. Dodge, 103 Ill. 125; State v. Mitchell, 21 Ohio St. 592; State v. Judges, 21 Ohio St. 11; Strange v. Dubuque, 62 Iowa 205; Suth. on Stat. Const., secs. 127, 128, 129, and cases cited; Smith's Com., secs. 595, 596; Sedg. Const. Law 32; 1 Potters Dwarris on Stats. 354, 355; Ex-Parte Westerfield, 55 Calif. 552; Desmond v. Dunn, 55 Calif. 251; Zeigler v. Gadis, 44 N. J. L. 363; Hammer v. State, 44 N. J. L. 669; Bouvier Law Dictionary "local"; 1 Kent Comm. 415; 3 Bouvier's Institutes 95; Jacobs Law Dict. "statute"; 2 Dwarris on Stat. 463; Van Giessen v. Bloomfield, 47 N. J. L. 442; Closson

Gray, et al, v. Taylor et al.

v. Trenton, 48 N. J. L. 440; Wheeler v. Philadelphia, 27 P. F. S. 338; Kilgore v. MaGee, 4 Nor. 401.

Laws 1909, chapter 80, never was legally enacted. U. S. R. S., sec. 1842; Field v. Clark, 143 U. S. 671; Pang-horn v. Young, 32 N. J. L. 30; Cooley on Con. Lim., 7 ed. 124; U. S. Constitution, article 1, sec. 7; 3 Wigmore, sec. 1684; 23 A. & E. Enc. of Law, 1 ed. 192.

Ballot was misleading and deceiving. C. L. 1897, sec. 631, par. 2; C. L. 1897, secs. 1701, 1706, 1801; Laws 1903, chap. 64, sec. 1; Tally v. Grider, 66 Ala. 122; Lanier v. Padgett, 18 Florida, 843, 844; McKinney v. Commission-ers, 26 Fla. 264, et seq.; Zeiler v. Chapman, 54 Mo. 305-6; State v. Woodson, 67 Mo. 336; State v. Albin, 44 Mo. 349; Pitkin v. McNair, 56 Barb. 77-8; People v. Kopple-kom, 16 Mich. 342; Nefzger v. Railway, 36 Ia. 644; State v. Piper, 17 Neb. 618, 619.

The election was void because there was no registration of voters. Laws 1909, ch. 80, C. L. 1897, secs. 1709, 1710; McCrary on Elections, secs. 135, 193; State v. Scarburox, 110 N. C. P. 232; Smith v. Board of Co. Comms., 45 Fed. 725.

The legislature of the Territory cannot confer judicial power to determine the validity of an election upon the board of county commissioners. U. S. R. S. 1874; Hunike v. Dold, 7 N. M. 11, 12; Garcia y Barela v. Barela, 6 N. M. 245; Payne v. Hook, 7 Wall. 430; Barry v. Hull, 6 N. M. 643.

It is upon defendants to show that expenditures for public buildings made by the name of repairs were not such repairs as added or changed the old buildings in a manner to adapt them for use as a court house and offices. Pipeline Co. v. R. R. Co., 67 N. J. L. 278; City of Catletts-burg v. Self, 74 N. W. 1064.

Material allegations not controverted. C. L. 1897, sec. 2665, sub-sec. 67.

HEWITT & HUDSPETH for Appellees.

The legal enactment of Council Bill No. 86 was not called in question by the plaintiff in the court below and

cannot be raised for the first time in an appellate court. Nall v. Wabash & St. L. & P. Ry. Co., 97 Mo. 75; Commissioners of Highways v. Chicago & N. W. Ry. Co., 34 Ill. Appeals 35; Bennett v. Mo. Pac. Ry. Co., 105 Mo. Rep. 642, 645; Transfer Co. v. Canty, 103 Ill. 423; Carlile, 18 Colo. 461.

Question of conflict of laws 1909, ch. 80, with Springer Act was not raised in court below and should not be considered on appeal. Nall v. Wabash, 97 Mo. 75; Com. v. Ry. Co., 34 Ill. Ap. 35; Bunnell v. Ry. Co., 105 Mo. Rep. 642, 645; Transfer Co. v. Canty, 103 Ill. 423; Hunel v. Carlile, 18 Colo. 461.

Laws 1909, ch. 80, is valid. Codlin v. Board of County Commissioners, 9 N. M. 565.

The approval or non-approval by Governor of Laws 1909, ch. 80, not in issue. Nall v. Wabash, etc., 97 Mo. 75; Com. v. Ry. Co., 34 Ill. App. 35; Bennett v. Ry. Co., 105 Mo. Rep. 642, 645; Transfer Co. v. Canty, 103 Ill. 423; Hunel v. Carlile, 18 Colo. 461.

If a later act covers the whole subject of the first and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act. U. S. v. Tynen, 11 Wall. 88, 89; Bartlett v. King, 12 Mass. 545; Commonwealth v. Cooley, 27 Mass., 10 Pick. 37; Tracy v. Tuffy, 134 U. S. 206.

The mere showing that the act as deposited in the secretary's office fails to show compliance with a rule of each house as to authentication in the place of the journals of each house, in the face of the message of the governor, the endorsements of the chief clerks of each branch of the legislature to the effect that the bill was passed by the legislature, is not sufficient to justify the holding that the law is invalid. Cottrell v. State, 9 Nebr. 125; Leavenworth Co. v. Higenbothem, 17 Kans. 74; Taylor v. Wilson, 17 Nebr. 88; McDonald v. State, 80 Wis. 407; In re Ryan, 80 Wis. 414.

The court was without jurisdiction in this case. 10 A. & E. Enc. of Law, 2d ed., 816; Parmenter v. Bourne, 35 Pac. 586; Hipp v. Charlevoix Co., 62 Mich. 456 and cases cited.

Gray, et al, v. Taylor et al.

### OPINION OF THE COURT.

PARKER, J.—This is an equitable action brought by plaintiffs as tax payers of the County of Lincoln, to restrain and enjoin the erection of a court house and jail at Carrizozo in said county, and to enjoin the paying out and expenditure of $28,000 of money in the treasury of the county, proceeds of bonds issued and sold by the board of county commissioners for the purpose of erecting a court house and jail at Carrizozo in said county. The action of the board of said county was based upon Chapter 80 of the Laws of 1909, which was initiated in the legislature of 1909 by Council Bill No. 86. Trial was had in the court below which resulted in a denial of the injunction and dismissal of the bill. Appellants make various complaints of the action of the court below.

1. Counsel for appellants argues against the validity of the act because it fails to bear the signatures of the presiding officers of the legislative council and house as required by the respective rules of each house, and cites Field v. Clark, 143, U. S. 671. In that case the specific question presented was whether the journals of the two houses of congress, which contradicted the terms of the act by showing that a certain section of the act, not appearing in the act had in fact been passed by both houses, would control the terms of the act, or whether the engrossed bill, signed by the presiding officers of each house and the president, found in the archives of the office of the secretary of state, would control the recitals of the journal. The court held the latter would control. It held that the journals could not contradict the act but did not hold that they might not be read in aid of the act. Counsel also cites Harwood v. Wentworth, 162 U. S. 557, in which case the holding was the same.

But the question in this case is whether the journals may be resorted to in aid of the act in order to show that it in fact passed both houses. There is no legislative requirement that any bill shall receive the signature of the respective presiding officers of the two houses. The only requirement is found in a rule adopted separately by each house. The journals of the two houses show the

passage of the bill and in such case they may be judicially noticed in aid of the act.   McDonald v. State, 80 Wis. 507; Gardner v. Collector, 6 Wall. 499; 7 Ency. Ev. 991, n. 18.

Objection to the validity of the act is made on account of the absence of the signature of the governor and certificate by him of the date when he received the same.   The statutory requirements in this regard is found in Sec. 1842, U. S. R. S., which provides:

"That 'every bill which has passed the legislative assembly of any territory shall, before it becomes a law, be presented to the governor; if he approve he shall sign it; but if not, he shall return it, with his objections, * * * If any bill is not returned by the governor within three days, Sundays excluded, after it had been presented to him, the same shall be a law in like manner as if he had signed it, unless the legislative assembly by adjournment *sine die* prevent its return, in which case it shall not be a law.' "

It appears from the journals that the act was passed many days before March 18, the last day of the session and the day upon which the governor sent a message to the legislature stating that he had allowed the act to become law by limitation.   We have examined the original engrossed bills on file in the office of the secretary of the Territory and find that this was the uniform practice of the governor in regard to acts allowed to become laws by limitation, and on none of them does he show the date of receipt of the act by him.   In the absence of any evidence to the contrary we are compelled to assume that the executive acted lawfully and his message will be assumed to imply the receipt by him of the act more than three days prior to the message.

2.   The contention is made that the petition for the election was not in accordance with the act and that, consequently, the county commissioners had no power to call the election.

The act provides:

"Sec. 2.   That Sec. 630 of the Compiled Laws of the Territory of New Mexico, of 1897, be, and the same is, hereby amended so as to read as follows:

"Sec. 630.   Whenever the citizens of any county in

this Territory shall present a petition to the Board of County Commissioners signed by qualified electors of said county, equal in number to at least one-half the legal votes cast at the last preceding general election in said county, asking for the removal of the county seat of said county, to some other designated place, which petition shall be duly recorded in the records of said county, and said board shall make an order directing that the proposition to remove the county seat to the place named in the petition, be submitted to a vote of the qualified electors of said county at the next general election, if the same is to occur within one year of the time of presenting said petition, otherwise at a special election to be called for that purpose at any time within two months from the date of presenting said petition: *Provided,* That whenever it is proposed to remove a county seat of any county which has public buildings consisting of a court house and jail, the original construction of which cost said county more than the sum of thirty thousand ($30,000) dollars, such cost to be ascertained from the records of the Board of County Commissioners of said county, then before said board of commissioners shall make such order so submitting such proposition to remove the county seat, to the qualified voters of said county, shall require from the petitioners or the persons interested in the removal of said county seat a deposit of forty thousand dollars ($40,000) in money, which said deposit shall be placed in the treasury of said county, which said sum of money when so placed in said treasury shall be used in the construction of a court house and jail in the event that the proposition for the removal shall receive a majority of the votes cast at such election, but such deposit shall not be required as a condition precedent to submitting such proposition for the removal in counties which have no court house and jails, the cost to the county of which, as ascertained from the records of said county commissioners is less than said sum of thirty thousand dollars ($30,000) as aforesaid; but the same shall be required in all cases when it is proposed to remove a county seat from a point situated on a railroad to another point also so situated. *Provided, further,* That the city, town, vil-

lage or place named in the petition to which it is proposed to remove said county seat shall be at least twenty miles distant from the then county seat of said county and said petitioners or persons interested in the removal of said county seat shall cause to be conveyed to said county by a good and perfect title, in the event of the proposition for the removal shall receive a majority of the votes cast at such election, sufficient suitable land to be accepted, if containing as much as three-fourths of an acre for court house, jail and other buildings for such county, the deed for which shall be filed with and accepted by the Board of County Commissioners before calling said election which deed to be re-delivered to the grantor therein named in case said proposition to remove said county seat fails to receive a majority of the votes cast at such election, and that no proposition to remove a county seat from a city, town, village or place, situated on a railroad, to one not so situated, shall be entertained or voted upon, and that no vote shall be ordered on substantially the same proposition more than once in ten years."

The petition presented to the Board of County Commissioners in this case was as follows:

"County Seat Petition."

"To the Honorable Board of County Commissioners, of Lincoln County, Territory of New Mexico:

We, the undersigned, qualified electors of the County of Lincoln, in the Territory of New Mexico, respectfully petition you to call an election and submit to a vote of the qualified electors of said Lincoln County, the proposition to remove the county seat of said Lincoln County to Carrizozo, a town situated on the El Paso and Southwestern railroad."

Counsel urges that this petition does not meet the requirements of the statute. He says that this was not a petition to remove the county seat to Carrizozo, but we are unable to agree with the conclusion urged. The proposition was not to submit the question of locating the county seat generally, thus calling for signatures of persons who were opposed to, as well as in favor of the removal. It presents the specific proposition *to remove*

the county seat to Carrizozo. Thus no signer to the petition, and they were largely in excess of the required number, could have been deceived by the petition. Counsel cites Lanier v. Padgett, 18 Fla. 842, and McKinney v. Meyers, 26 Fla. 267. In the first case the statute provided for a petition praying for a change. The petition in that case was "for the purpose of legally locating the court house." The court held properly that the petition was fatally defective because signers might easily have been secured to such a petition who really favored the retention of the county seat at its then location. In the second case the facts were similar and the same decision reached. In this latter case, however, the court uses the significant expression: "If there was in the petition any prayer, or expression of desire, *for a change of location* of the county site, the bill does not inform us of it." In the case at bar the desire to remove the county seat by the signers is apparent.

We therefore hold that the petition was sufficient.

3. Objection is made to the election held at which a large majority of the people of the county determined that the county seat should be located at Carrizozo, on the ground that there was no registration of the voters. By the terms of the statute it is impossible to have registration within the time following the petition and the election. This alone disposes of this contention.

4. The next contention is that there were frauds in the election, but as found by the court below, there was only one illegal vote cast and that was in favor of Lincoln.

5. The act requires that when public buildings at the old county seat cost by way of original construction $30,000, the petitioners for the new county seat must deposit $40,000 in money for the erection of the new county buildings. The court below found that the original cost of the old buildings was less than $30,000 and, as we think, correctly held that subsequent repairs should not be counted.

6. Counsel urges that the law in question is local and special and that no town within twenty miles of a

Gray, et al, v. Taylor et al.

county seat can ever be a county seat no matter what its qualifications may be. Without reviewing the cases cited it is sufficient to say that this case was considered in Codlin v. Kohlhousen, 9 N. M. 565, and the act was held not to be special or local by reason of the twenty mile limitation. We see no reason to depart from the holding in that case.

7. Counsel for appellants complains that the ballots submitted to the people at the election were misleading and not in accordance with the requirements of the provision of Sec. 630, above quoted, which requires that the board shall make an order directing that the proposition to remove the county seat to the place named in the petition be submitted to a vote of the qualified electors of said county. The ballot provided for in the order was "For County Seat———" and was in exact accordance with the terms of section 631, C. L. 1897. We see no reason why this ballot was calculated to deceive the voter and there is no evidence that the voters were thereby deceived.

8. The point is not raised in this case as to whether this is not a collateral attack upon the location of the county seat. *Quaere,* whether this cause should not be affirmed upon the doctrine announced in Torres v. Board of County Commissioners decided at this term.

For the reasons stated the judgment of the lower court will be affirmed and it is so ordered.

Ira A. Abbott, A. J., concurs.

Chief Justice Pope and Associate Justice Wright, concur specially and file separate opinion.

Associate Justice Mechem having tried the cause below and Associate Justice McFie not having heard the argument did not participate in this decision.

POPE, C. J.—[Concurring specially.] While agreeing with most of the opinion, I do not concur in the conclusion announced in the second paragraph. I am of opinion that the form of the petition for the election did not comply with the terms of the statute. The latter clearly requires that the petitioners must ask for the removal of the county seat to some other designated place. The petition to my mind asks simply for a vote on the proposition

to change. A person opposing Carrizozo but desiring an election simply to settle the question between Carrizozo and Lincoln once for all, might with perfect consistency have signed the petition. Such a petition does not comply with the law and is not a valid initiation of the proceedings for an election. I concur, however, in the result upon the ground that the case is within the holding of the court this day announced in Torres v. Board of County Commissioners, that where the proceeding is practically an attempt to settle a county seat controversy the exclusive method is *quo warranto*. I am authorized to say that Mr. Justice Wright concurs in these views.

See Opinion rendered on rehearing, Gray et al v. Taylor et al, 16 N. M. Rep., and 113 Pac. 591.