[No. 12144.   Department One.   August 20, 1914.]

## CARL H. MANN, *Appellant*, v. R. L. WRIGHT *et al.*, *Respondents.*[1]

COUNTIES—REMOVAL OF COUNTY SEAT—PROCEEDINGS—REVIEW. The submission of a proposition to change a county seat being a political and not a judicial question, alleged error of the county commissioners in their conclusions as to the sufficiency of the petition because of neglect in rejecting names signed thereto, which were alleged to have been later signed to a second petition for the removal of the county seat to another place, will not be reviewed by the courts, except in case of fraud or arbitrary action, in the absence of statute giving the courts jurisdiction of such matters.

Appeal from a judgment of the superior court for Douglas county, Steiner, J., entered June 29, 1914, dismissing an action for an injunction, upon sustaining a demurrer to the complaint. Affirmed.

*Lester S. Overholt*, for appellant.

*E. D. Clough* and *Peter McPherson*, for respondents.

*Geo. S. Lee*, amicus curiae.

GOSE, J.—This is an action to enjoin a county seat election. A demurrer was sustained to the petition. Plaintiff has appealed.

[1]Reported in 142 Pac. 697.

The suit is prosecuted by a citizen and resident taxpayer of Okanogan county, on behalf of himself and other resident taxpayers. The defendants are, respectively, the board of county commissioners and the county auditor of Okanogan county. The complaint alleges that, on the 6th day of April, 1914, two petitions were presented to the board of county commissioners of Okanogan county, "each signed by and containing the names of the qualified electors of said county, equal in number to more than one-third of all the votes cast in said county at the last preceding general election." It is further alleged that one of the petitions prayed for the removal of the county seat of Okanogan county to the town of *Omak*, in said county, and that the other prayed for the removal of the county seat to the town of *Okanogan*, in such county. It is alleged that, on the 7th day of April, 1914, the board of county commissioners made an order in reference to the petition praying for the removal of the county seat from Conconully, to *Omak*, which contains the following recital:

"Said petition having been duly canvassed and considered and it appearing to this board is signed by qualified electors of said county of Okanogan equal in number to more than one third of all the votes cast in the county at the last preceding general election, being signed by 1812 such qualified electors of said county, it is ordered that said petition be granted and that said proposition be submitted to the electors of Okanogan county at the next general election of county officers to be held on November third, 1914, and that due notice thereof be given according to law."

It is also alleged that the petition for the removal of the county seat to the town of *Omak* is illegal, in that it contains the names of several hundred persons who later signed the petition to remove the county seat to *Okanogan*, and that, if such names were stricken from the *Omak* petition, it would not contain the requisite number of names. The prayer is that the order of the board be vacated, and that the county auditor be enjoined from placing the name of the

town of *Omak* on the ballot at the ensuing general election.

The respondents joined in a demurrer upon two grounds, (1) that the court has no jurisdiction of the persons of the defendants, or either of them, or of the subject-matter of the action; (2) that the petition does not state facts sufficient to constitute a cause of action.

The procedure for the removal of county seats is contained in the statute, Rem. & Bal. Code, §§ 3832 to 3840 inclusive. Section 3832 (P. C. 123 § 1) reads:

"Whenever the inhabitants of any county of this state desire to remove the county seat of the county from the place where it is fixed by law or otherwise, they shall present a petition to the board of county commissioners of their county, praying such removal, and that an election be held to determine to what place such removal must be made: Provided, that the petition for removal shall set forth the names of the towns or cities to which such county seat is proposed to be removed."

Section 3833 (P. C. 121 § 3) provides that, if the petition is signed by qualified electors of the county equal in number to at least one-third of all the votes cast in the county at the last preceding general election, the board must, at the next general election, submit the question of removal to the electors of the county. Section 3834 (P. C. 123 § 5) prescribes the notice which shall be given, and how the returns shall be made. Section 3835 (P. C. 123 § 7) provides that, in voting on the question, "each elector must vote for or against the place named in the petition, plainly designating same on his ballot." Section 3836 (P. C. 123 § 9) provides that, when the returns have been received and compared and the result ascertained by the board, "if three-fifths of the legal votes cast by those voting on the proposition are in favor of any particular place," the board must give notice of the result conformably to the statute. Section 3837 (P. C. 123 § 11) provides that the board must declare the place selected as the county seat, and that it shall thereupon be the duty of the several county officers to remove their respective offices

and records to the county seat thus chosen.

This court has had occasion to review at length all the questions presented by the record. *Parmeter v. Bourne*, 8 Wash. 45, 35 Pac. 586, 757; *Rickey v. Williams*, 8 Wash. 479, 36 Pac. 480; *Krieschel v. Board of Com'rs, Snohomish County*, 12 Wash. 428, 41 Pac. 186; *Heffner v. Board of County Com'rs, Snohomish County*, 16 Wash. 273, 47 Pac. 430. In the *Parmeter* case, a proposition to remove the county seat from Oysterville was submitted to the electors. The board of commissioners canvassed the returns and declared South Bend to be the county seat. Plaintiff, a taxpayer of Oysterville, sought to vacate the order of the board and to enjoin the county officials from transferring the county records from Oysterville to South Bend. He alleged fraud in the counting of the votes by the judges of election, and issuing fraudulent returns to the board of commissioners, but did not allege that the board of commissioners participated in the fraud. In holding that, in the absence of a statute authorizing the proceeding, the court had no jurisdiction to go behind the returns, the court said:

"If, then, the removal of the county seat is a political question (a proposition which cannot be seriously denied), the regulation and control of which under our form of government are within the exclusive jurisdiction of the legislative department, it follows from the logic of *State v. Jones*, *supra*, that the state of facts, properly certified to by the tribunal, solely empowered by the legislature to pass upon the questions involved, must be taken as conclusive. The legislature has made provisions for the determination of these facts. In these provisions it did not see fit to provide for any review or investigation by the courts, and the courts, therefore, are without authority to act in the premises."

In *Rickey v. Williams*, a petition containing 124 names was presented to the board of county commissioners of Stevens county praying the removal of the county seat from Colville to Kettle Falls. Stevens county at the last preceding general election had cast 1,033 votes. The law required

the petition to be signed by qualified electors of the county to the number of at least one-third of all the votes cast in the county at the last preceding general election, being the same statute to which we have referred. The board made the following order:

"The petition of Arthur W. Holly and one hundred and twenty-three others for an election for the removal of the county seat from Colville to Kettle Falls read, and on motion of C. K. Simpson the prayer of the petitioners granted, and auditor ordered to have notices printed and posted."

The proposition was submitted to the voters, Kettle Falls received the requisite number of votes, and the board entered an order to that effect. The plaintiffs sued to enjoin the removal of the county seat to Kettle Falls. The court held that, inasmuch as the petition upon its face showed that it did not have the number of signatures required by the statute, the submission was unauthorized and the election "held in pursuance thereof was necessarily invalid," and that injunction was the proper remedy. The court said:

"The granting of the writ in this case did not involve an inquiry into any matter which rested in the discretion of the board, nor into any disputed question of fact."

The *Krieschel* case was an action to enjoin the removal of the county seat from the city of Snohomish to the city of Everett. After the matter had been submitted to the electors, the board of commissioners entered an order declaring the result, and declaring the city of Everett to be the county seat. It was held that the board did not canvass the returns; that it did not ascertain the number of legal votes cast, and that,

"The result of the election not having been ascertained, the pretended canvass and ascertainment by the board was not merely irregular, but absolutely void, and constituted no foundation or authority whatever for the order and declaration entered upon the records."

In the *Heffner* case, the commissioners of Snohomish county, after the decision in the *Krieschel* case, examined, compared and canvassed the election returns, and again declared the city of Everett to be the county seat. In reaching that conclusion, the board rejected certain votes appearing on the returns because it conceived them to be illegal and fraudulent. In addressing itself to the contention that the votes were erroneously rejected, the court said:

"But where the legislature have devolved upon a particular tribunal or board the duty of ascertaining, declaring and publishing the result of an election to determine a special question, such as the removal of a county seat, it would seem to have been their intention that such tribunal, and no other, should finally determine such result, and they cannot discharge their duty without exercising their judgment as to the matters to be determined. All the courts of general jurisdiction can do, in cases of this character, is to ascertain whether the tribunal or board has proceeded according to the directions of the statute defining their duties, and to declare their proceedings ineffectual and void if they have departed from such directions . . . But in this case it appears that the board, or at least a majority of its members, received and 'compared' the returns and ascertained the number of legal votes cast on the proposition and declared the result, and if they arrived at a wrong conclusion we know of no legal method whereby their act, in that regard, can be reviewed by the courts. *Parmeter v. Bourne*, 8 Wash. 45 (35 Pac. 586, 757.)"

We announced a like view in *State ex rel. McCallum v. Superior Court*, 72 Wash. 144, 129 Pac. 900, 44 L. R. A. (N. S.) 1209, in considering the provision of the local option statute, which gives "final jurisdiction" to the superior court in contests respecting the validity of local option elections.

It will appear from a reference to these cases that we have held the submission of a proposition to change a county seat to be a political or a public question; that, in the absence of a statute giving the courts jurisdiction of such matters, the courts will not interfere with the determination of the

board of county commissioners where the order of submission is fair upon its face, except in cases of fraud or arbitrary action such as was present in the *Rickey* and *Krieschel* cases. The charge in this case is, in effect, that the board arrived at a wrong conclusion because it did not reject names upon the Omak petition which, it is alleged, were later signed to the Okanogan petition. But this court has held that there is no legal redress where the board has acted and declared the result and "arrived at a wrong conclusion," except in the instances noted. In the case at bar, the signers of the petition are admittedly qualified electors in Okanogan county. The question presented to the board of county commissioners was whether the names of those who had signed the petition for removal to Omak should be stricken because they were later signed to a petition to remove the county seat to the town of Okanogan. It will be presumed that the board concluded that such names should not be stricken. Whether or not they committed error in so holding, under the rules announced in the foregoing cases, is not a judicial question.

Counsel who has appeared as *amicus curiae* argues, and cites sustaining authority from other jurisdictions to the effect, that, under our statute, Rem. & Bal. Code, § 1002 (P. C. 81 § 1729), a writ of certiorari lies to review this question. There are two answers to this contention; one is that a writ of review was not sought; and the other and broader one is that the *Heffner* case was decided more than a year after the writ of review statute took effect. It would be profitless to review the authorities cited by counsel, in view of the fact that the judgment of the learned trial court must be sustained under the decisions of this court.

The judgment is affirmed.

CROW, C. J., MAIN, and ELLIS, JJ., concur.