76 P.2d 41

ORCHARD et al. v. BOARD OF COM'RS
OF SIERRA COUNTY et al.

No. 4324.

Supreme Court of New Mexico.

Feb. 1, 1938.

Edward D. Tittmann, of Hillsboro, for plaintiffs in error.

Ove E. Overson, of Hot Springs, Fred Nicholas, of Albuquerque, Frank H. Patton, Atty. Gen., John Baron Burg, Los Lunas, and Frederick Sherman, of Deming, for defendants in error.

BRICE, Justice.

This suit was brought to enjoin the removal of the county seat of Sierra County from Hillsboro in said county to Hot Springs in said county.

Plaintiffs (plaintiffs-in-error here) introduced no testimony at the trial of this case, but certain facts were stipulated by the parties, the substance of which is as follows:

That none of the precincts made returns conforming precisely to the requirements of the statute for returns in general elections; that the returns of nine precincts, though defective, showed either by certificate or tally, or both, the vote cast for and against the removal of the county seat. From these returns it appears there were 901 votes cast for the removal of the county seat to Hot Springs and 364 against such removal; that, subsequent to the time returns were filed with the county clerk, certificates were made by election officers, either on the returns or by affidavit, showing that in the nine precincts that had voted on the question and had made no returns of any kind that 1,104 of the ballots cast in said precincts were for the remov-

al of the county seat to Hot Springs and 112 against such removal.

Some attempt was made to comply with the law hereafter set out in this opinion with regard to correcting the returns, but the application to the district court for a recount of the ballots was withdrawn, and evidence of the votes cast in the nine precincts was supplied in the manner we have stated.

Fraud was charged in the complaint, but the court found there was no evidence of it and we fail to discover any in the record.

At the trial of the case the court summoned the election officers, opened the ballot boxes, and caused the ballots to be recounted by the election officers in his presence. Affidavits were made by such officers, showing the result of the election in their respective precincts, which were admitted in evidence. An election officer from each precinct testified that the election on the question of removal of the county seat in his precinct was conducted in the same manner as that for state and county officers; that the figures given in the affidavit mentioned were a true recount of the ballots cast in his election precinct. The result of this recount varied but little from the count made by the Board of County Commissioners in the canvass of the election returns. The certificate of the Board of County Commissioners showed that the vote cast for Hot Springs as the county seat was 2,012, whereas the recount showed it was 2,038; that the vote cast

against the removal of the county seat was 572, whereas the recount showed it was 577. This of course made no difference in the result.

The substance of the facts found by the court is as follows:

That on the 3d day of November, 1936, there was held in the county of Sierra, State of New Mexico, and each of the precincts thereof, an election for all state and county officers and for presidential electors, Senators, and Congressmen, and upon the question of whether the county seat of Sierra County should be removed from Hillsboro to Hot Springs in said county. The said election was conducted by judges and clerks theretofore appointed by the Board of County Commissioners of Sierra County, N. M. In each of the precincts of Sierra County the question of the removal of the county seat was orderly conducted and ballots on the question delivered by the election officials to each elector admitted to vote, and a fair opportunity given each elector to cast his vote upon the question.

That 2,038 votes were cast for the removal of the county seat from Hillsboro to Hot Springs, and 577 votes cast against such removal. There was no fraud, nor conspiracy to commit fraud, on the part of defendants, or any of them, in the obtaining of returns of said removal election, or in the canvass thereof, or in the issuing of a certificate thereof.

That there were no irregularities in the obtaining of the returns, in the canvass of

the votes, or in the issuing of the certificates, as to the results thereof 'sufficient to change the true vote cast 'or to change the result of the election on the matter of the removal of the county seat.

That the certificate of election executed by the members of the Board of County Commissioners' of Sierra County and attested by the county clerk was erroneous in that it was certified that the total vote cast for the removal of the county seat to Hot Springs was 2,012, whereas it was in fact 2,038; and it was erroneously certified that the total vote cast against the removal of the county seat was 572, whereas it was 577. That otherwise the recital of the facts, dates, and figures in said certificate is true and correct.

That there was no fraud, or conspiracy to commit fraud, in the calling and conducting of said election for the removal of the county seat from Hillsboro to Hot Springs.

That the ballots used at the polls in said election upon the question of the removal of the county seat were so worded and so arranged as to clearly explain the issue and direct the voter how to vote, and were not uncertain, ambiguous, or deceitful in their meaning. There is no proof that any voter was deceived thereby.

That the issues made by the complaint to the effect that officials failed to give proper and lawful notice of the election on the removal of the county seat; that the land tendered for the use of a courthouse was burdened with encumbrances; that the county seat election was illegal because the Legislature of New Mexico in creating Sierra County provided that "the county seat of said County of Sierra is hereby permanently located in the town of Hillsboro in the County of Sierra"; each and all, both as to facts and law, were made, tried, and adjudicated in that certain proceeding wherein Bird et al. (including the Board of County Commissioners and plaintiffs herein) were plaintiffs with others, and the defendants herein were defendants, numbered 2768 on the docket of the district court of Sierra County, N. M. No offer of proof of any facts supporting such allegations was made at any time in this proceeding.

That there was no proof of any illegal votes having been cast in said election for the removal of the county seat. Upon these facts the court concluded and decreed that Hot Springs was the county seat of Sierra County.

Section 3 of article 10 of the New Mexico Constitution is: "No county seat, where there are county buildings, shall be removed unless three-fifths of the votes cast by qualified electors on the question of removal at an election called and held as now or hereafter provided by law, be in favor of such removal. The proposition of removal shall not be submitted in the same county oftener than once in eight years."

That part of the Statutes of New Mexico with reference to a change or removal of county seats, material to this case, is as follows:

"Whenever the citizens of any county in this state shall present a petition to the board of county commissioners signed by qualified electors of said county equal in number to at least one-half the legal votes cast at the last preceding general election in said county, asking for the removal of the county seat of said county to some other designated place, which petition shall be duly recorded in the records of said county, said board shall make an order directing that the proposition to remove the county seat to the place named in the petition, be submitted to a vote of the qualified electors of said county at the next general election, if the same is to occur within one year of the time of presenting said petition, otherwise at a special election to be called for that purpose at any time within two months from the date of presenting said petition." Section 33-3501, N.M.Sts.Ann.1929.

"The county commissioners shall cause a certified copy of such order to be published in some newspaper of general circulation published in said county for four consecutive weeks immediately prior to such election, and by hand bills posted up at three of the most public places in each precinct at least four weeks prior to such election.

"The ballots to be voted at such election shall have printed thereon the words: For county seat ———, with the name of the place for which the voter desires to cast his ballot either printed or written thereon. Such ballots shall be canvassed as in elections for county officers and the returns of such election shall be certified by the county clerk to the secretary of state together with a certified copy of the order of the county commissioners and a sworn certificate of the publication thereof, to be filed in the office of said secretary." Section 33-3502, N.M.Sts.Ann.1929.

The statute (which was passed in 1909, prior to the adoption of the Constitution) further provides for the removal of the county seat, if the "proposition for the removal shall receive a majority of the votes cast at such election."

There is no provision in the statutes of New Mexico for the contest of an election held for changing the location of a county seat, nor is there any statute providing for the manner in which the election shall be held; but only that the ballot shall be "convassed as in elections for county officers."

Elaborate provisions are made by statute for the correction of discrepancies, omissions, informalities, ambiguities, errors, and uncertainties, appearing upon the face of the returns, or between poll books and certified copies thereof; by summoning the election officers, who are required to make the necessary corrections or supply omissions. If it appears that the returns cannot be corrected without a recount of the ballots, provision is made therefor through application to the district judge, who in person, or by an appointed representative, shall cause the ballots to be recanvassed in his presence or that of his representative, and a new certificate made by the election

officers to conform to the facts. Section 44, c. 147, N.M.L.1935.

The canvassing board is not permitted to adjourn or become functus officio until it shall have canvassed all returns of the election before it, or to come before it; and provision is made for mandamus to compel such canvass, upon the petition of any qualified elector. Section 41-352, N.M.Sts. Ann.1929. This applies to the failure to perform the statutory duty for correction of the returns. Board of County Com'rs et al. v. Chaves, 41 N.M. 300, 67 P.2d 1007.

We are met at the threshold of the inquiry with the question of whether the equity jurisdiction of the district court extends to contests of elections for the location of county seats; a question upon which the courts are not agreed.

The location of county seats is a political matter. It is the function of the Legislature which can be exercised by specific act, or through delegated means, unless restricted by the Constitution.

It has been held by many courts that, in the absence of constitutional or statutory authority, there is no condition or circumstance under which a court can interfere with the political department of government in the location of a county seat; that it is a function of the Legislature to be exercised, either directly or by delegation to local boards or a vote of the electorate of the county, or other such means. Townsen et al. v. Mersfelder et al., 49 Tex.Civ.App. 289, 109 S.W. 420; Alley v. Denson, 8 Tex. 297; Walker v. Tarrant County, 20 Tex. 16; Harrell et al. v. Lynch et al., 65 Tex. 146; McCall v. Tombstone, 21 Ariz. 161, 185 P. 942; Heffner v. Board of Com'rs, 16 Wash. 273, 47 P. 430; Hamilton et al. v. Carroll, 82 Md. 326, 33 A. 648; Mendenhall et al. v. Denham et al., 35 Fla. 250, 17 So. 561; Markert et al. v. Sumter County et al., 60 Fla. 328, 53 So. 613, Ann.Cas.1912C, 690, and annotation at page 691; Parmeter v. Bourne et al., 8 Wash. 45, 35 P. 586, 757; State v. Judge of Second Jud. Dist. Court, 13 La.Ann. 89; Marsden v. Harlocker, 48 Or. 90, 85 P. 328, 120 Am.St.Rep. 786; Hamilton et al. v. Tucker Court, 38 W.Va. 71, 18 S.E. 8; Boren v. Smith, 47 Ill. 482; Dickey v. Reed, 78 Ill. 261, 262; 9 R.C.L. title "Elections," §§ 102 and 143; 15 C.J. title "Counties," § 63(4).

Some courts have held that equity has jurisdiction to enjoin the removal of a county seat if the election was void. Nixon et al. v. Police Jury, 132 La. 53, 60 So. 717; State ex rel. Moore v. Patch et al., 65 Mont. 218, 211 P. 202; Atkinson v. Roosevelt County, 66 Mont. 411, 214 P. 74; Krieschel v. Board of County Com'rs, 12 Wash. 428, 41 P. 186; Mann v. Wright, 81 Wash. 358, 142 P. 697; Cheney v. Ragan, 151 Ga. 735, 108 S.E. 30.

Other courts have held that in the absence of a statute providing for a contest that equity has jurisdiction upon the theory that there is no adequate remedy at law. Sweatt v. Faville, 23 Iowa 321; Rice v. Smith, 9 Iowa 570; Poe v. Sheridan County, 52 Mont. 279, 157 P. 185; Ander-

son v. Board of Com'rs, 32 W.Va. 640, 9 S.E. 868, 5 L.R.A. 334, 25 Am.St.Rep. 840; Scott v. McGuire, 15 Neb. 303, 18 N.W. ·93; Board of County Com'rs v. Branham, 193 Ind. 195, 139 N.E. 313.

We agree that in the absence of constitutional restrictions, or a delegation of authority, the Legislature alone has authority to select the location of county seats. It may do so through direct legislation or by agencies selected through general laws. No court could interfere with a legislative act locating a county seat in the absence of such restriction; and, reasoning in the abstract, it would seem that the courts have no more authority to interfere with the selection of locations of county seats through agencies of the Legislature than they have of locations made by legislative acts. Walker v. Tarrant County, 20 Tex. 16. While the location of county seats is purely political, yet, through delegation of authority to the courts (whether strictly speaking, such authority could be consistently delegated) or interference upon one pretext or another, courts of law, and in many instances courts of equity, have assumed jurisdiction in such contests. 15 C.J. title "Counties," § 56.

The question was before the territorial Supreme Court in two cases. In Torres v. County Com'rs, 15 N.M. 703, 110 P. 851, a suit to enjoin the building of a courthouse upon the ground that Estancia was not the county seat of Torrance County, the action was held to be a collateral attack "on the validity of the location of the county seat of Torrance county, * * * an attack which would not be collateral would be a proceeding in the nature of quo warranto." This case was cited with approval, and relied on in support of the same conclusion, by the Supreme Court of Arizona in McDonald v. Cochise County, 37 Ariz. 90, 292 P. 603.

Gray et al. v. Taylor et al., 15 N.M. 742, 113 P. 588, 591, decided by the territorial Supreme Court, was a suit by taxpayers to enjoin the building of a courthouse at Carrizozo upon the ground that Carrizozo was not the county seat of Lincoln County. The case was decided on the merits in both district and Supreme Court. The Supreme Court stated: "The point is not raised in this case as to whether this is not a collateral attack upon the location of the county seat. Quære, whether this cause should not be affirmed upon the doctrine announced in Torres v. Board of County Commissioners (decided at this term)."

In a concurring opinion by Chief Justice Pope, concurred in by Justice Wright, it was stated: "I concur, however, in the result, upon the ground that the case is within the holding of the court this day announced in Torres v. Board of County Commissioners, that, where the proceeding is practically an attempt to settle a county seat controversy, the exclusive method is quo warranto."

The only case we have found where quo warranto proceedings have been instituted to contest such an election is McDonald v. Cochise Co., supra. The Supreme Court of

Montana has held that it will not lie for such purpose, "because a county seat is not an office." Poe v. Sheridan County, 52 Mont. 279, 157 P. 185, 187; also it is stated in People ex rel. Dean v. County Com'rs, 6 Colo. 202, "It is clear that there is no remedy by quo warranto [for such contest], for that remedy is only employed to test the right to an office or franchise"; also it was held in Leigh v. State, 69 Ala. 261, that, where the result of a county seat election has been declared by the Board of Supervisors, as provided by the statute, the result so declared cannot be contested by quo warranto. It was likewise held in that case that the supervisors' judgment could not be questioned by mandamus, although a different conclusion was reached in People ex rel. Dean v. County Com'rs, supra, and Calaveras County v. Brockway, 30 Cal. 325.

 We have held that the statutory remedy for contest of elections to public office has superseded quo warranto, and is an exclusive remedy for such purpose, State ex rel. Abercrombie v. District Court, 37 N.M. 407, 24 P.2d 265; but in other respects the remedy at common law and under the statute is in force. We have held that the statute of the 9th of Anne, c. 20 (1710), is in force, State ex rel. Community Ditches v. Tularosa Com. Ditch, 19 N.M. 352, 143 P. 207; though by reason of its local application its adoption has been denied in some jurisdictions, Brooks v. State, 3 Boyce, Del., 1, 79 A. 790, 51 L.R. A.,N.S., 1126, Ann.Cas.1915A, 1133; but affirmed in others, State v. Birmingham Water Works Co., 185 Ala. 388, 64 So. 23, Ann.Cas.1916B, 166. In any event, the common-law remedy is as broad as the statute, Brooks v. State, supra, and is in full force in this jurisdiction except as to contests for public offices, as the New Mexico statute continues "the remedies heretofore obtainable by writ of quo warranto," section 115-101, N.M.Sts.Ann.1929; and specifically provides that such action may be brought "(a) When any person shall usurp, intrude into or unlawfully hold or exercise any public office, civil or military, or any franchise within this state, or any office or offices in a corporation created by authority of this state." Section 115-104, N.M.Sts.Ann.1929.

 The remedy of quo warranto may be invoked against municipal corporations, or quasi municipal corporations, as well as private corporations, to oust them from the usurpation of a franchise or power not authorized by the charter or the laws under which they are organized.

It was stated by the Supreme Judicial Court of Massachusetts in Malone, Attorney General, v. New York, N. H. & H. R. Co., 197 Mass. 194, 83 N.E. 408, 410: "Inasmuch as corporations derive their authority from the Legislature, they can exercise only such powers as are either expressly included in their franchise, or are fairly incidental to the enjoyment of it. An attempt to do that which is ultra vires is a usurpation of what would be a franchise if the right to do it had been granted. As was said by Mr. Justice Bradley in

California v. Central Pacific R. R. Co., 127 U.S. 1-41, 8 S.Ct. 1073, 32 L.Ed. 150, 'Corporate capacity is a franchise.' So in People v. Trustees of Geneva College, 5 Wend. (N.Y.) 211, it is declared that 'the exercise of powers by a corporation is the exercise of franchises.' A remedy by quo warranto is given in most courts for the exercise of usurped powers by corporations, even when the consequences are not grave enough to justify a forfeiture of the charter. In proceedings by quo warranto under Rev.Laws, c. 192, §§ 6–11, when the Attorney General does not intervene, there may be a judgment that the corporation be perpetually excluded from the exercise of the franchise or privilege not conferred by law, which it is found to have been exercising. But in such a case there cannot be a judgment of forfeiture. In this there is an analogy to the decisions in other states to which we have referred."

The remedy has been held to lie against municipal corporations which attempt to extend their corporate limits without authority. People v. Oakland, 92 Cal. 611, 28 P. 807; State v. College View, 88 Neb. 232, 129 N.W. 296. To oust a municipality from the exercising of the unauthorized power of levying a license tax against one engaged in the unlawful sale of liquors. State v. Coffeyvile, 78 Kan. 599, 97 P. 372, 130 Am.St.Rep. 386; State v. McLean County, 11 N.D. 356, 92 N.W. 385. To test the right of a municipal corporation to exercise a power that would be a franchise if granted by its charter and to oust it from its use. State v. Topeka, 31 Kan. 452, 454, 2

P. 593. It is held in State v. Tracy, 48 Minn. 497, 51 N.W. 613, that municipal, as well as private, corporations derive their franchises from the state, and that it is the peculiar province of the state to inquire into the misuser or usurpation of such franchise by quo warranto proceeding. In State ex rel. Little v. Board of Regents, 55 Kan. 389, 40 P. 656, 29 L.R.A. 378, it was held by the Supreme Court of Kansas that quo warranto was the proper remedy to oust the Board of Regents and officers of the University of Kansas (held to be a quasi municipal corporation) from the exercise of the power which they had usurped in charging students of the University a library fee of $5, or, upon the failure to pay it, excluding such students from the use of the books. From these authorities we conclude that a municipal corporation can be ousted from the exercise of a privilege, power, or pretended franchise not granted to it by the law or authority under which it exists. 22 R.C.L. title "Quo Warranto," § 10: "If a municipal or other public corporation usurps or exercises powers or franchises not conferred upon it by law, quo warranto is the appropriate remedy to oust it from the exercise thereof;" 51 C.J. Title "Quo Warranto" Sec. 17.

In determining the question of whether the Board of County Commissioners, in ordering the removal of the offices and property of the county from Hillsboro to Hot Springs, have usurped a power or franchise and are exercising it in violation of

law, it is necessary to consider the following statutes:

"Each organized county in this state shall be a body corporate and politic, and as such shall be empowered for the following purposes." Section 33-3601, N.M. Sts.Ann.1929.

"The powers of a county as a body politic and corporate shall be exercised by a board of county commissioners." Section 33-4201, N.M.Sts.Ann.1929.

Specific powers are given to the corporation, among which are those to sue and be sued, to purchase and hold real and personal property for use of the county, to sell and convey real estate owned by the county, to make all contracts necessary to the exercise of its corporate or administrative powers, and "to exercise such other additional powers as may be specially conferred by law." Section 33-3601. The name under which it can sue or be sued is "the board of county commissioners of the county of ———." Section 33-3701, N.M. Sts.Ann.1929.

It is specifically provided that sheriffs, county treasurers, county clerks, and probate judges shall maintain their offices at the county seats of the respective counties, Sts. 33-3401 and 34-404; and inferentially that all officers shall do so.

By section 33-3503 it is provided that, should a majority of the votes at such election (for removal of a county seat) be cast in favor of the place named in the petition, the county seat shall be removed to such place.

"So soon as convenient buildings can be had at such new county seat the courts for said county shall be held therein, and so soon as the new court house and jail shall have been completed, the county commissioners shall cause all the county records, county offices, and property pertaining thereto, and all county prisoners, to be removed to the new county seat." Section 33-3504.

From these statutes we conclude that Sierra County is a municipal corporation, or else a quasi municipal corporation (Donalson v. San Miguel County, 1 N.M. 263), with certain definite powers and franchises fixed and granted by law; among which is the power coupled with a mandatory duty to remove to a new county seat, when properly selected, all county offices and property pertaining thereto, and all county prisoners; but to be exercised only in case a county seat shall have been removed as provided by law, and after a new courthouse and jail shall have been built ready for occupancy.

Is this grant of power such as that its exercise in violation of law can be controlled by proceedings in quo warranto?

It would be a misuse of this power if the conditions upon which it can be exercised did not exist.

While we conclude that there is an adequate remedy by quo warranto to prevent the removal of the property and offices of

the county from Hillsboro to Hot Springs if unlawful, and in deciding whether the power can be exercised, the district court in such proceedings must necessarily determine whether a new county seat has been established; yet the order of the Board of County Commissioners adjudging the result of an election in favor of a new county seat, when pleaded as a defense to such proceeding, is conclusive, as to contest it in such action would be a collateral attack.

Our predecessor, the Territorial Supreme Court, in Torres v. Board of Com'rs, supra, and the Supreme Court of Arizona, in McDonald v. Cochise County, supra, seem to have held that the proper remedy in such cases is quo warranto, as though it was a contest of the right to hold a public office; but we find no such authority in the proceeding at common law, the statute of Anna c. 20, (1710), or under our quo warranto statute. Poe v. Sheridan County, supra; People ex rel. Dean v. County Com'rs, supra; Leigh v. State, supra.

■ We conclude there is no adequate remedy at law, and particularly by quo warranto proceeding, to contest such election. There is no statute granting to such courts any jurisdiction over county seat election contests.

In this state the matter of the removal of county seats from a place where public buildings are located is no longer a strictly legislative function.

Section 3 of article 10 of the State Constitution, supra, removes from the political department of the government that power and confers it upon the interested electorate of the county, to be exercised under then existing or subsequently enacted laws. No jurisdiction is granted to the courts by the Constitution or any statute whereby they are authorized to interfere with the political authority of the state in such cases. If, therefore, there is any remedy in equity (which we believe is the present trend of authority), it should not go further than to relieve against a void election. Nixon et al. v. Police Jury, 132 La. 53, 60 So. 717; Rickey et al. v. Williams et al., 8 Wash. 479, 36 P. 480; Parmeter v. Bourne et al., 8 Wash. 45, 35 P. 586, 757; Mann v. Wright, 81 Wash. 358, 142 P. 697; Cheney v. Ragan, 151 Ga. 735, 108 S.E. 30.

But one of the issues in this case is whether there is any law in New Mexico authorizing the removal of county seats from where there are county buildings, and it is otherwise contended that the election is void.

If it is true that the election is void, then there was in fact no election, and these issues, in the interest of the public, should be decided.

If there be no authority to remove this county seat, it is not an interference with the political department of government to enjoin the unlawful removal of the offices and property of the county from the place where the law requires them to be kept. We think that in the absence of any remedy at law to prevent such interference

with government, that the equity powers of the court could be invoked. State ex rel. Forsythe et al. v. Ellis, Judge, 42 La.Ann. 1104, 8 So. 305. We have concluded that the subject-matter is not entirely outside the field of equitable cognizance and was properly before the district court. Gray et al. v. Taylor et al., supra; Van Horn v. Demarest, 77 N.J.Eq. 264, 77 A. 354; Roe v. Jersey City, 80 N.J.Eq. 35, 86 A. 815.

But one question raised has any merit; which is, whether there is any authority provided, or existing, in this state for the removal of county seats where there are public buildings, but other issues will be considered and determined.

Section 3 of chapter 109, N.M.L.1884, provided: "The county seat of said county of Sierra be and the same is hereby permanently located and established at Hillsboro in said county of Sierra."

The laws authorizing the removal of county seats quoted in this opinion were enacted in 1897, as amended in 1909, and provided that county seats (with certain exceptions not material here) shall be removed if "a majority of the votes at such election be cast in favor of the place named in the petition." Section 33-3503.

All laws regarding removal of county seats were enacted by the territorial Legislature, and did not become a part of the laws of the state unless consistent with the Constitution. This was provided by section 4 of article 22 of the State Constitution, which is as follows: "All laws of the Territory of New Mexico in force at the time of its admission into the Union as a state, not inconsistent with this constitution, shall be and remain in force as the laws of the state until they expire by their own limitation, or are altered or repealed."

Section 3, article 10, of the Constitution of New Mexico, provides: "No county seat, where there are county buildings, shall be removed unless three-fifths of the votes cast by qualified electors on the question of removal at an election called and held as now or hereafter provided by law, be in favor of such removal."

Plaintiffs reason that, as the statute for the removal of county seats provides it may be done by a favorable vote of a majority cast at the election, and the Constitution provides that it cannot be done "unless three-fifths of the votes cast by qualified electors on the question of removal * * * be in favor of such removal," the statute in so far as it applied to county seats at which there were public buildings was inconsistent with section 3 of article 10, supra; and therefore did not remain in force as a state law upon the adoption of the Constitution.

As the state has passed no law to conform with the constitutional provision, we must decide whether section 3, article 10, is self-executing or amendatory of the county seat removal statutes.

If there had been no existing legislation at the time of the adoption of the Constitution, and none subsequently enacted, under which the question of county seat removal could be submitted to a vote of the electorate, there would be no authority in the legislation or the electorate to remove a county seat from a place where there are public buildings.

If section 3 of article 10 of the Constitution had provided only that "no county seat could be removed unless upon a three-fifths favorable vote of ballots cast, etc.," plaintiffs' contention would be correct. Varney v. Albuquerque, 40 N.M. 90, 55 P.2d 40, 42; 106 A.L.R. 222. In that case section 12 of article 9 of the N. M. Constitution was construed to be not self-executing; that it did not authorize a city to issue bonds upon a favorable majority vote of qualified electors where a statute of the state required a favorable vote of two-thirds of the electors voting, etc.

The part of section 12, article 9 of the Constitution material to an understanding of that decision is: "No such debt shall be created unless the question of incurring the same shall, at a regular election for councilmen, aldermen or other officers of such city, town or village, have been submitted to a vote of such qualified electors thereof as have paid a property tax therein during the preceding year, and a majority of those voting on the question, by ballot deposited in a separate ballot box, shall have voted in favor of creating such debt."

We stated: "Section 12 of article 9 of the State Constitution confers no powers on the city, nor does it contain a grant of power to 'qualified electors thereof as have paid a property tax therein during the preceding year.' It provides what shall not be done, not what may or can be done. It does not authorize municipalities to issue bonds, but prohibits their issuance unless certain conditions precedent are performed."

We cited a number of county seat contest cases in that opinion, to which reference is made.

But here we have a different situation. This section of the Constitution is ambiguous. It is in a form which ordinarily is construed not to be a grant of power. But, considering the whole section together, it was manifestly intended that the question could be submitted under laws in force at the time section 3 of article 10 was adopted. It does not stand alone; it is aided by legislation specifically referred to in the Constitution as a means by which the provision should be executed. If the question could be submitted to the electorate under that law, then it was intended that the section should be so executed until the enactment of new laws on the subject, or a repeal of the existing laws.

It could not be so submitted unless it was likewise intended that, until the Legislature otherwise provided, the interested electorate could change a county seat by an affirmative vote of three-fifths of those vot-

ing on the question, under the provisions of the existing law.

In any case, of course, it is a limitation on the power of the Legislature.

A like question was so decided by the Supreme Court of Washington in Holmes & Bull Furniture Co. v. Hedges, Treasurer, 13 Wash. 696, 43 P. 944, from which we quote:

"Section 6, art. 8, of the state constitution provides that 'no county, city, town, school district, or other municipal corporation shall for any purpose become indebted in any manner to an amount exceeding one and one-half per centum of the taxable property in such county, city, town, school district, or other municipal corporation, without the assent of three-fifths of the voters therein voting at an election to be held for that purpose.' The objections made by the appellant to the legality of the warrant in question are: (1) That the constitutional provision, above quoted, in so far as it provides for the taking of the assent of the voters at the election, is not self-executing, and that it is necessary that the legislature should assent to the holding of such election. * * *

"The first of these objections is most strongly relied upon by counsel for appellant, and it is not without some difficulty that we have reached a conclusion. After an extended examination of the subject, we are unable to agree with the contention of the appellant that 'it is necessary that the legislature shall assent to the holding of such election.' We think that if the legislature has, by general enactment, made provision whereby the officers of school districts may call elections, and has determined the character of the notice to be given thereof, and the manner for conducting the same and declaring the result, these provisions, in themselves, are sufficient; that the right to give or withhold assent to the incurring of the indebtedness belongs, under the constitution, to the voters, without other legislative authority or permission; that, to this extent, at least, the provision of the constitution in question is self-executing. The provision of the constitution should be construed as amounting to something more than a limitation upon legislative discretion. True, the provision, in and of itself, is silent as to the manner of holding such elections; but the legislature, by general enactment, has provided the manner for calling and conducting both annual and special school elections, and, indeed, like provisions existed in the territorial statutes at the time of the adoption of the constitution, and these provisions were by the constitution continued in force, subject, of course, to the power of the legislature to alter or repeal them, of which provisions it is only fair to presume that the framers of that instrument had full and necessary information. * * * We think that, having provided the means for enabling the voters of any school district to determine for themselves the propriety of extending the debt limit of the district, no

further legislative action was necessary, and that, with the aid of the machinery so provided, the constitutional provision under consideration becomes operative and effectual."

We stated in Lanigan v. Gallup, 17 N. M. 627, 131 p. 997, 1001: "The rules which courts must observe in construing legislative enactments apply equally to constitutional provisions. Every statute or constitutional provision must be construed with reference to the object intended to be accomplished by it, and as already said, in order to ascertain this object, it is·proper to consider the occasion and necessity for this enactment. If the purpose and well-ascertained object of a statute or constitutional provision is inconsistent with the precise words, the latter must yield to the controlling influence of the will of the law-making power, resulting from the whole act or the entire Constitution."

While the provision may not be self-executing in the ordinary sense, it selects its own ancillary legislation through which it is to be executed. Construing the section as a whole, it was the intention of the constitutional convention that the people interested could remove a county seat at an election called and held under existing law if not less than three-fifths of the electors voting on the question cast their ballots for such removal.

■ .The fact that section 3, chapter 109, N.M.L.1884, creating the county of Sierra, provided, "The county seat of said county of Sierra be and the same is hereby permanently located and established at Hillsboro in said County of Sierra," does not mean that the county seat is established at Hillsboro forever. The Legislature subsequently provided that county seats could be removed by a majority vote of the electors of a county; and the Constitution of the state provided for the removal of county seats under laws then or subsequently in force, as we have held. Neither subsequent Legislatures nor the people are bound by the act of 1884, if in fact it was intended that the county seat should be located at Hillsboro for all time. Newton v. Board of County Com'rs, 100 U.S. 548, 25 L.Ed. 710.

It is contended that the canvassing of the ballots was irregular and fraudulent. The court found there was no fraud, and we find no evidence of fraud. The law provides that the canvass of the ballots shall be as in elections for county officers, but it does not provide that irregularities shall·void the election. The canvass was most irregular, but are we to disfranchise the electors of Sierra County on the question of the location of their county seat upon mere irregularities, in the absence of proof, or even a claim, that Hot Springs did not receive more than three-fifths of the ballots·cast on the question?

■ Mere irregularities in the conduct of an election will not render an election void in the absence of a statute so providing, and there is no statute under which a county seat·election could be held

to be void. The general law must apply, and the rule is stated: "* * * It may be stated, therefore, that as a general rule honest mistake or mere omissions on the part of the election officers, or irregularities in directory matters, even though gross, if not fraudulent, will not avoid an election unless they affect the result or at least render it uncertain. Nor is it material in this connection that the failure of the election officers to perform their duty subjects them to penalties. And even if the acts of such officers are fraudulent the votes of the electors should not be invalidated if it is possible to prevent it. The legislature, may, however, expressly provide that certain omissions shall invalidate the vote, in which event no alternative is left to the court. In the absence of such express provision it has been well pointed out in reference to the various duties imposed on election officers that their great objects are to afford to every citizen having a constitutional right to vote an opportunity to exercise that right to prevent those not so entitled from voting, and to insure the conduct of the election in such manner in point of form that the true number of legal votes can be ascertained with certainty." 9 R.C.L. title "Elections," § 102.

To the same effect is Wright v. Closson, Mayor, et al., 29 N.M. 546, 224 P. 483, 485, in which we stated: "The object and purpose of an election is to obtain the will of the public upon a given issue or the selection of officers, and when the voice of the majority of those participating has been

obtained the election will not be disturbed by reason of technical irregularities in the manner of conducting it or of making the returns thereof, especially in the absence of pleading and proof that the result was thereby changed or at least made uncertain. Carabajal v. Lucero, 22 N.M. 30, 158 P. 1088; Montoya v. Ortiz, 24 N.M. 616, 175 P. 335; Gallegos v. Miera, 28 N.M. 565, 215 P. 968."

 The ballot was not misleading. The statute is as follows: "The ballots to be voted at such election shall have printed thereon the words: For county seat ———, with the name of the place for which the voter desires to cast his ballot, either printed or written thereon." Section 33-3502, N.M.Sts.Ann.1929.

The ballot was as follows:

"Election on Question of the Removal of the County Seat of Sierra County, November 3rd, 1936
(Also printed in Spanish)
"Instructions to Voters, Mark with pen and ink or indelible pencil a cross in the square to the right of the way you desire to vote upon the question 'Shall the county seat of Sierra County New Mexico be removed from its present location in Hillsboro in said county to the Town of Hot Springs in Sierra County, New Mexico.' Any elector desiring to vote for the removal of County seat from Hillsboro to Hot Springs mark a cross in the blank square opposite the words 'For County Seat at Hot Springs.' Any elector desiring to

vote against the removal of county seat from Hillsboro to Hot Springs mark a cross in the blank square opposite the words 'Against County Seat at Hot Springs.' "

(Also printed in Spanish)

"For County Seat at Hot Springs......☐

(Also printed in Spanish)

Against County Seat at Hot Springs..☐ "

(Also printed in Spanish)

The ballot is in the words of the statute, except it has a separate line to vote against the county seat at Hot Springs. There is no contention that any one was misled, and we do not find that it could be so. The same question was raised in Gray et al. v. Taylor et al., 15 N.M. 742, 113 P. 588, 591, in which the territorial Supreme Court stated: "Counsel for appellants complains that the ballots submitted to the people at the election were misleading, and not in accordance with the requirements of the provision of section 630, above quoted, which requires that the board shall make an order directing that the proposition to remove the county seat to the place named in the petition be submitted to a vote of the qualified electors of said county. The ballot provided for in the order was 'For County Seat ———,' and was in exact accordance with the terms of section 631, Comp.Laws 1897. We see no reason why this ballot was calculated to deceive the voter, and there is no evidence that the voters were thereby deceived."

■■■ Having determined that the election was authorized and valid, the certificate of the canvassing board is prima facie correct, if not binding on a court of equity.

We could (and probably should) stop here, but one other question will be decided.

The plaintiffs contend that the court erred in permitting proof of the result of the election to be made by the evidence of the election officials, who recounted the ballots in his presence; instead of admitting the ballots in evidence.

■■■ Those who counted the ballots made certificates as to the number of votes cast in their respective precincts and testified that the certificates which were introduced in evidence showed a true and correct recount of the ballots. It was from this evidence that the court found that 2,038 ballots had been cast for Hot Springs for county seat and 577 against it. Assuming this was error, and it probably was, how can it help plaintiffs? They objected to the introduction of the ballots in evidence, or the opening of ballot boxes, without which there could be no evidence to disprove the correctness of the certificate of the canvassing board. The following occurred at the trial:

"Mr. Tittmann: Come the plaintiffs and object to the opening of the ballot boxes and a recount of the ballots for the following reasons:

"1. That this is not an election contest but an injunction suit to prevent the illegal transfer of a county seat from Hillsboro to Hot Springs and that the court has

no authority or power in such a proceeding to open the ballot boxes on the record as here shown."

It appears from this that plaintiffs were not inclined themselves to permit the court to ascertain the truth. The burden was on them to prove that Hot Springs was not the selected county seat, yet they objected to the evidence which they contend here should have been introduced to prove it.

The certificate of the canvassing board is prima facie correct. And we find not the slightest testimony in the record that would tend to prove any fatal variance. Indeed, we do not find that appellees contend that Hot Springs did not receive more than three-fifths of the ballots cast on the question.

Appellees cannot remove the offices and property of Sierra County to Hot Springs until a new courthouse and jail have been constructed, as required by section 33-3503, Sts.1929. They disclaim any intention of doing so.

We do not hold that bonds can be issued as provided by section 33-3503, Ann.Sts.1929, in view of section 10 of article 9 of the State Constitution. The necessity of compliance with this constitutional provision would seem obvious.

The decree of the district court is affirmed. It is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.